499 S.E.2d 817

The STATE, Respondent,

v.

William J. GREENE, Appellant.

No. 2813.

Court of Appeals of South Carolina.

Submitted Oct. 8, 1997.

Decided Nov. 13, 1997.

552

J.M. Long, III, of Long Law Firm, Conway, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Charles H. Richardson, Columbia; and Solicitor Ralph J. Wilson, Conway, for respondent.

PER CURIAM:

William J. Greene was convicted of trafficking in heroin and sentenced to twenty-five years imprisonment and a fine of

$100,000. Greene appeals his conviction. We affirm in part, reverse in part, and remand.[1]

## I.  ISSUES

**A.** Did the trial judge err by calling a law enforcement officer to testify as a court's witness at an evidence suppression hearing?

**B.** Did the trial judge err by admitting into evidence drugs seized as a result of a consent search?

**C.** Did the trial judge properly correct an error by giving a curative instruction to the jury?

## II.  FACTS

As a result of undercover drug operations, a search warrant was issued to search Greene's residence and business for illegal drugs and other evidence of drug transactions. Greene's wife Pamela and her three daughters were at the residence when law enforcement officers executed the search warrant. No illegal drugs or evidence of illegal drugs were discovered in the search.

Greene was not at home during the search. While in route to execute the search warrant, law enforcement officers noticed Greene driving a car with the co-defendant. They pulled him over and arrested both him and his passenger. The passenger informed the officers Greene hid his drugs in his mother-in-law's house, referring to another residence titled in Greene's name but owned by Pamela's mother who lives in New York.

When the officers searching Greene's residence learned of this information, they began to seek Pamela's consent to search her mother's residence. Pamela told the officers she was in charge of her mother's house and had a key. She signed a consent to search form, accompanied the officers to her mother's residence, and let them inside. The search uncovered 5.84 grams of heroin.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

A suppression hearing was held prior to trial to determine the admissibility of the drugs. Greene challenged the admission of the heroin on three grounds: (1) Pamela's consent was not freely and voluntarily given; (2) there was no probable cause for the consent search; and (3) Pamela's consent to search was fruit of the poisonous tree because the original search warrant was not based upon probable cause. As to issue (2), the trial judge ruled that the question of probable cause for the consent search was irrelevant because probable cause is not required where a consent to search is freely and voluntarily given. As to issue (3), the trial judge also ruled that the question of probable cause for the search warrant was irrelevant, holding a voluntary consent to search following a Fourth Amendment violation makes the additional search valid. Therefore, the court concluded the only remaining issue was whether Pamela freely and voluntarily consented to the search of her mother's residence.

The State called two witnesses, Lieutenant Barry Marsh and Deputy George Askew.

Marsh testified that Pamela was detained and not free to leave while the search warrant was being executed. He asked Pamela for consent to search her mother's residence and she agreed. Pamela told Marsh that she was in charge of her mother's house and had the keys. Marsh stated that neither he nor any other person in his presence used threats, promises, or coercion to obtain Pamela's consent. According to Marsh, he informed Pamela that she did not have to consent to the search. Pamela signed the consent form in Marsh's presence. He and other officers accompanied Pamela to her mother's residence and she opened the door with her key.

Askew testified he first saw Pamela after she had signed the consent to search form. He had no knowledge of any person using threats or coercion to gain consent from her. Askew witnessed Pamela open the door to her mother's house with her key.

Greene then called Pamela to testify. According to Pamela, she and her three daughters were at home when law enforcement came to search the house around 7 p.m. The officers rang the door bell and one of her daughters answered the door. The officers came inside with guns drawn, pointing

them at Pamela and her children. A total of five officers came inside her house. Pamela and her daughters were detained in one of the bedrooms by Lieutenant Martha Hunt. Pamela acknowledged that Hunt never abused or threatened her in any way. However, Pamela and her children were subjected to a full body strip search. Pamela testified that at some point during the search of the house Officer Ernest Hampton told her that she had better tell them where the drugs were hidden because everyone in the house was going to jail and the children were going to the Department of Social Services. Then the officer in charge, Benito Reyes, told Pamela that nobody was going to jail.

Later during the search, Reyes spoke with Pamela alone and informed her the officers wanted to search her mother's house. He told her that either she could consent to the search or the officers could get a search warrant. He said she could prolong the ordeal by not signing the consent or she could sign the consent and the officers would get out of her way. Pamela testified that no one explained that she did not have to consent. She signed the consent in order to get the officers to leave her alone and because she was nervous and upset. Pamela admitted that by the time she signed the consent form the atmosphere in her home had calmed down. She also acknowledged she graduated high school and could read the form.

The trial judge then called Lieutenant Martha Hunt to testify as a court's witness. Hunt testified she was not present to hear the conversations between Pamela and the other officers leading to her consent. Hunt admitted she performed strip searches of Pamela and her children. Hunt stated no one in her presence threatened or coerced Pamela into giving the consent to search. Hunt described Pamela's emotional state and demeanor as good during the execution of the search warrant considering the circumstances. She said Pamela was not "irrational or freaking out."

At the conclusion of the hearing, the trial judge found Pamela's consent to search her mother's residence was given voluntarily, based on the totality of the circumstances.

## III. DISCUSSION

### A. Calling Court's Witness

■ Greene first contends the trial judge erred by calling Hunt as a court's witness during the evidence suppression hearing. He argues he was prejudiced because the State has the burden of proving the voluntary nature of a consent to search and the court should not assist the State in making that showing. However, the record indicates Greene did not object to the trial judge calling Hunt as a court's witness. To the contrary, Greene's counsel agreed with the trial judge, saying, "I can understand and I don't object whatsoever to the Court bringing Ms. Hunt in, but I do understand your need to want to hear that testimony because there has been no evidence presented of the [police officers] who entered the residence." Therefore, Greene cannot be heard to complain now. A contemporaneous objection is required to properly preserve an error for appellate review. *State v. Hoffman,* 312 S.C. 386, 440 S.E.2d 869 (1994). This issue is not preserved for our review.

### B. Admission of Drugs into Evidence

Greene next contends the trial judge erred by admitting into evidence the heroin found during the consent search of his mother-in-law's residence for three reasons.

■ He first argues that there was not sufficient evidence presented at the suppression hearing for the trial judge to find that Pamela's consent was freely and voluntarily given. We disagree.

■ Whether a consent to search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *State v. Dorce,* 320 S.C. 480, 465 S.E.2d 772 (Ct.App.1995). The State has the burden of showing voluntariness. *Id.* The issue of voluntary consent, when contested by contradicting testimony, is an issue of credibility to be determined by the trial judge. *Id.* A trial judge's conclusions on issues of fact regarding voluntariness will not be disturbed on appeal unless so manifestly erroneous as to be an abuse of discretion. *State*

*v. Rochester,* 301 S.C. 196, 391 S.E.2d 244 (1990) (dealing with voluntariness of a statement).

Greene argues Pamela's consent was involuntary because she was coerced by two threats from law enforcement officers. She testified the first threat came from Officer Hampton, who threatened to take her to jail and the children to DSS. Even though the State did not present evidence to expressly controvert Pamela's testimony, there is evidence from which the trial court could have concluded she knew the threat was not real, since Pamela acknowledged that Sergeant Reyes told her he was in charge and nothing was going to happen to her.

▪ Pamela testified that the second threat came from Reyes. He asked for her consent to search her mother's house and said that either she could consent to the search or the police could get a search warrant. Again, the State did not present evidence to controvert this allegation. However, while a threat to obtain a warrant is a factor to be considered in determining the voluntariness of consent, it does not necessarily vitiate that consent. *State v. Wallace,* 269 S.C. 547, 238 S.E.2d 675 (1977) (per curiam). Reyes's statement alone does not make Pamela's consent involuntary as a matter of law, but rather is simply one of the factors to consider in the totality of the circumstances.

We conclude the trial judge did not abuse her discretion in finding that Pamela freely and voluntarily gave the officers consent to search her mother's residence. The evidence supports the conclusion Pamela signed a consent to search form, which she had the ability to read, after she calmed down from the initial shock of the officers searching her home. She also accompanied the officers to her mother's residence and let them in with her key. Both of these uncontested facts, in addition to other contested facts, are consistent with consent. The trial judge was very careful to ensure that she had a complete understanding of the totality of the circumstances as evidenced by her calling Hunt to testify as a court's witness. The trial judge addressed each of the threats alleged by Pamela in her ruling and stated the reasons for her findings, all of which are amply supported by the record.

Secondly, Greene contends the consent to search does not eliminate the need for probable cause.

Greene's argument has no merit. "It is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973).

■ Finally, Greene contends the trial judge erred by ruling that voluntary consent alone is sufficient to purge the taint of a Fourth Amendment violation. We agree.

■ The fruit of the poisonous tree doctrine holds that where evidence would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality, the evidence must be excluded. *State v. Plath,* 277 S.C. 126, 284 S.E.2d 221 (1981); *see Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Consent to search, by itself, is not sufficient to purge the taint of a previous unlawful search or seizure. "When a consensual search is preceded by a Fourth Amendment violation, ... the government must prove not only the voluntariness of the consent under the totality of the circumstances, but the government must also 'establish a break in the causal connection between the illegality and the evidence thereby obtained.'" *United States v. Melendez–Garcia,* 28 F.3d 1046, 1053 (10th Cir.1994) (citation and footnote omitted); *see State v. Robinson,* 306 S.C. 399, 412 S.E.2d 411 (1991) (holding consent to search procured during unlawful stop invalid unless State proves consent is voluntary and that sufficient attenuating circumstances remove taint of unlawful stop so that search is not an exploitation of unlawful stop).

As the court explained in *Melendez–Garcia,* the two requirements of showing not only that the consent is voluntary in fact, but also demonstrating a break in the causal connection between the illegality and the consent, "address separate constitutional values and they are not always coterminous." *Melendez–Garcia,* 28 F.3d at 1054. "We require the government to demonstrate that any taint of an illegal search or seizure has been purged or attenuated not only because we are concerned that the illegal seizure may affect the voluntari-

ness of the [person's] consent, but also to effectuate the purposes of the exclusionary rule." *Id.*

■ The factors to consider in determining whether a consent is tainted by a preceding unlawful search or seizure are: the temporal proximity between the police illegality and the consent to search; the presence of intervening circumstances; and the purpose and flagrancy of the misconduct. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Greene was clearly prejudiced by this error of law. The heroin would not have been discovered and seized but for Pamela's consent to search her mother's residence. Pamela's consent to search was gained while she was being detained during the execution of a search warrant on her residence. If the search warrant was not supported by probable cause a Fourth Amendment violation occurred. In that event, the State would have the burden of proving not only that the consent was voluntary, but also that it was untainted by the illegal Fourth Amendment violation so that the act of consenting was "an independent act of free will." *United States v. Chavez–Villarreal,* 3 F.3d 124, 127 (5th Cir.1993). Since the trial judge made no determination as to the validity of the search warrant, we must remand this case for a hearing to make this determination.

In the event the judge determines a Fourth Amendment violation did occur, then the court must determine if the State has demonstrated a break in the causal connection between the illegal search and the consent so as to render the act of consenting the independent product of an essentially free will.

### C.  Curative Jury Instruction

■ Finally, Greene contends that the trial judge did not properly correct an error made in charging the jury.

In Greene's closing argument, he told the jury that the State was withholding evidence from the jury regarding prior undercover drug purchases from Greene. The State objected and the trial judge gave the following curative charge to the jury:

[T]he State objected to a portion of the closing of the Defendant, and as a result thereof, I will now give you a curative charge. I charge you that the rules of evidence precluded the State from going into past dealings with William Greene. It would be improper for the State to have done so. Once the Defendant has brought it up or opened that door, so to speak, then and not until then would it have been proper for the State to address prior dealings with this Defendant. This rule is a protection for a Defendant requiring the evidence to focus on the conduct that's charged to avoid possible conviction on [sic] Defendants based on any past dealings. The State was simply abiding by that rule. The State was not hiding or withholding evidence.

Greene objected to the last sentence of the trial judge's curative charge. As a result, the trial judge gave an additional curative charge:

[I]n the curative charge that I had previously given you in which I was addressing a rule of evidence, please know that I in no way was commenting on the facts in this case nor was I giving an opinion on the facts in this case.

For the first time on appeal, Greene argues that the second curative charge failed to properly correct the error of the first curative charge. Greene made no objections to the form of the curative charge. An error is deemed to be cured if a curative instruction is given. *State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1261, 137 L.Ed.2d 340 (1997). A contemporaneous objection to the sufficiency of a curative charge must be made to preserve the issue for appellate review. *Id.* Since Greene made no objection to the charge as given, this issue is not preserved for our review.

## IV. CONCLUSION

For the foregoing reasons we affirm the calling of Hunt to testify as a court's witness at the suppression hearing, the finding that Pamela's consent was voluntary, the conclusion that probable cause is not required for a consent search, and the trial judge's curative jury charge. We reverse the ruling that a voluntary consent alone is sufficient to purge the taint of a Fourth Amendment violation. We therefore remand this

case for further proceedings to determine: (1) whether a Fourth Amendment violation occurred; and if so, (2) whether the second prong of the test enunciated in *Melendez–Garcia* and *Robinson* is satisfied, that being, were there sufficient attenuating circumstances between the Fourth Amendment violation and the consent to search to remove the taint of the unlawful search and seizure so that the consent was not an exploitation of the Fourth Amendment violation.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

ANDERSON, HUFF, and HOWARD, JJ., concur.