573 S.E.2d 851

The STATE, Respondent,

v.

Dilando D. MAYBANK, Appellant.

No. 3566.

Court of Appeals of South Carolina.

Heard Oct. 10, 2002.

Decided Nov. 12, 2002.

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for respondent.

HOWARD, J.

Dilando D. Maybank appeals his convictions for possession of crack cocaine, possession of cocaine, resisting arrest, and assaulting a police officer while resisting arrest. He argues the trial court erred in failing to suppress evidence obtained pursuant to a warrantless search of his motel room because the police went to his room as a result of an invalid traffic stop of his vehicle. We affirm.

## FACTS/PROCEDURAL HISTORY

In August 1999, Detective Christopher Arakas observed a vehicle with a temporary license tag being driven along Highway 501 in Myrtle Beach. Based solely on the presence of the temporary tag, Arakas stopped the vehicle and spoke with the driver, an unlicensed fourteen-year-old male ("the youth"). As a result of this conversation, Arakas discovered Maybank was the owner of the vehicle and had allowed the youth to drive it. Intending to charge Maybank with allowing a fourteen year old to drive his vehicle, Arakas and Officer Joliff drove the youth to the motel where Maybank was staying.

The youth knocked on the motel room door, Maybank answered "yeah?", and the youth opened the door. Arakas and Joliff saw Maybank and a woman lying in bed and marijuana lying on a table. The officers identified themselves as police and told Maybank they wished to come in and speak with him about letting the youth drive his vehicle. Maybank gave the officers permission to enter.

As Maybank stood up from the bed, he grabbed something off the nightstand. Arakas asked Maybank if the officers could see what he had picked up. Maybank opened his hand revealing a tissue-wrapped, plastic bag containing crack cocaine.

After the officers told Maybank he was under arrest, he shoved Joliff aside and ran through the motel room doorway

attempting to escape. As the two officers tried to apprehend him, Maybank engaged in several brief fights with each of them. Maybank was eventually captured by backup officers, arrested, and later indicted for trafficking crack cocaine, possession of cocaine, and two counts of assaulting a police officer while resisting arrest.

Prior to trial, Maybank moved to suppress the illegal drugs found in the motel room. He argued because the officers would not have discovered the drugs but for the initial stop of his vehicle, the drugs should be suppressed. The State argued the drugs should be admitted into evidence because Maybank had no standing to challenge the stop, and in the alternative, a sufficient break existed in the causal connection between the improper stop and the discovery of the drugs.

Based on testimony presented at the suppression hearing, the trial court determined the initial stop of Maybank's vehicle was invalid,[1] but found the improper stop did not infect the subsequent discovery of the illegal drugs in Maybank's motel room. Furthermore, the trial court determined Maybank consented to the officers' request to enter his room. Thus, the trial court denied Maybank's motion to suppress, and the jury convicted Maybank of possession of crack cocaine, possession of powder cocaine, resisting arrest, and assaulting a police officer while resisting arrest. Maybank appeals.

## LAW/ANALYSIS

### I. Initial Traffic Stop

Maybank asserts the initial traffic stop of his vehicle violated his Fourth Amendment rights even though he was not present during the stop. Therefore, he argues the trial court erred in failing to suppress drugs found in his motel room as a result of information obtained during that stop. We disagree.

Initially, we note, both Maybank and the State incorrectly couch their arguments in terms of whether Maybank has standing to assert the officers' conduct violated his reasonable expectation of privacy in his vehicle. However, the

---

1. Neither party to this appeal challenges the trial court's determination that the initial stop of Maybank's vehicle was invalid. *See State v. Butler,* 343 S.C. 198, 202-03, 539 S.E.2d 414, 416 (Ct.App.2000) (holding the presence of a temporary tag on a vehicle is insufficient to provide reasonable suspicion to perform a traffic stop).

boundaries of the Fourth Amendment are not "defined exclusively by rights of privacy."[2] *Soldal v. Cook County*, 506 U.S. 56, 65–66, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).

The question before this Court is neither whether Maybank has standing, nor whether his reasonable expectation of privacy was violated. Rather, we must evaluate the substantive issue[3] of whether Maybank suffered a meaningful interference with a sufficient possessory interest in his vehicle.

## A. Meaningful Interference

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 133, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). For Fourth Amendment purposes, the traffic stop of a vehicle is a seizure. *See State v. Nelson*, 336 S.C. 186, 192–93, 519 S.E.2d 786, 789 (1999). In addition, the "[t]emporary detention of individuals during the stop of an automobile . . . constitutes [a] 'seizure' of persons within the meaning of [the] Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Therefore, when the officers stopped Maybank's vehicle, they clearly interfered with some individual's possessory interest in that vehicle.

---

2. If our decision rested on whether Maybank's reasonable expectation of privacy was violated, the analysis would end by stating that because Maybank allowed his vehicle to be driven in plain view on a public street, the officers' conduct did not implicate Fourth Amendment protections. *See Payton v. New York*, 445 U.S. 573, 586–87, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (holding when officers are in a public place, not protected by the Fourth Amendment, information gained as a result of their presence does not implicate a defendant's reasonable expectation of privacy under the Fourth Amendment); *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").

3. *See Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (holding courts must base their analysis on "the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing"); *cf. State v. Hiott*, 276 S.C. 72, 76–77, 276 S.E.2d 163, 165 (1981) ("[T]he United States Supreme Court has recently shifted away from a 'standing' approach to an inquiry focusing directly on the substantive issue of whether the claimant possessed 'a legitimate expectation of privacy' in the area searched.").

B.   Sufficient Possessory Interest

██  Meaningful interference with an individual's possessory interest is only the first step in the analysis.  For Maybank's argument to have merit, this Court must find the officers' traffic stop interfered with *his* possessory interest in that vehicle.  We hold it did not.

In *United States v. Powell*, 929 F.2d 1190, 1191 (7th Cir. 1991), police officers stopped a truck traveling along a public highway because the driver failed to use a blinker when entering the flow of traffic.  The driver informed the officer the truck belonged to Powell, who had hired the driver to deliver the truck to him.  A subsequent search of the camper shell attached to the truck revealed several bundles of marijuana.  *Id.* The driver assisted law enforcement officials by leading them to Powell.  The police arrested Powell on drug charges.  At Powell's subsequent trial, he attempted to suppress the drugs discovered as a result of the traffic stop.  *Id.* at 1192.

The Seventh Circuit Court of Appeals determined the initial stop of the truck was invalid.  *Id.* at 1993–94.  However, the court went on to evaluate whether the police violated Powell's Fourth Amendment rights by unlawfully seizing the truck. *Id.* at 1194–96.  The court reasoned the interests implicated by a vehicle stop are a motorist's right to be free from random, unauthorized seizures and to avoid the considerable anxiety these stops create.  The court noted further "[b]oth these interests are personal to the driver and passengers in the car stopped." *Id.* at 1195.  The court ruled the "personal nature of the interests implicated by a vehicle stop persuade us that a vehicle owner who is not in his car at the time it is stopped [cannot normally] . . . object to the stop." *Id.*

Thus, although Powell owned the vehicle, the court determined ownership alone was insufficient to substantiate the argument that the officers' brief seizure of his vehicle meaningfully interfered with his possessory interest in that vehicle.  Therefore, the court held his Fourth Amendment rights were not violated.  *Id.* at 1196.

Similar to the defendant's assertion in *Powell,* Maybank argues the initial stop of his vehicle violated his Fourth

Amendment rights even though he was not present during the stop. However, we find the Seventh Circuit's decision in *Powell* persuasive in both its reasoning and result. We hold Maybank's ownership of the vehicle, without more, does not substantiate the argument he retained a sufficient possessory interest to object to the temporary .seizure of his vehicle during a traffic stop. *Cf. Rawlings v. Kentucky,* 448 U.S. 98, 106, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (holding mere ownership of property seized as a result of an unlawful search is insufficient to permit defendant to assert a Fourth Amendment violation); *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ("[The] suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.").

■ Moreover, because Fourth Amendment rights are personal rights, Maybank cannot vicariously assert any claims the youth may have that the officers violated his Fourth Amendment rights by stopping the vehicle without reasonable suspicion to believe a crime had been or was being committed. *See Alderman,* 394 U.S. at 174, 89 S.Ct. 961 (holding Fourth Amendment rights are "personal rights which, like some other constitutional rights, may not be vicariously asserted"); *Simmons v. United States,* 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (holding "rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure").[4]

## II. Consent to Enter Motel Room

■ Maybank next asserts the officers did not obtain consent to enter his motel room. We disagree.

---

4. Because we hold Maybank may not assert a substantive violation of his Fourth Amendment rights occurred, we need not address whether a sufficient break existed in the causal connection between the invalid stop and the discovery of the drugs to warrant their admission into evidence. *See State v. Greene,* 330 S.C. 551, 560, 499 S.E.2d 817, 821 (Ct.App.1997) (holding to determine whether consent is tainted by a preceding unlawful seizure the court must consider "the temporal proximity between the police illegality and the consent to search; the

When contested by contradicting testimony, consent is an issue of credibility to be determined by the trial court. *State v. Dorce*, 320 S.C. 480, 482, 465 S.E.2d 772, 773 (Ct.App.1995). Furthermore, this Court is bound by the trial court's factual findings unless they lack evidentiary support or are clearly erroneous. *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001); *see also State v. Cutter*, 261 S.C. 140, 147, 199 S.E.2d 61, 65 (1973) (holding the appellate court sits to review errors of law in criminal cases).

During the hearing on Maybank's motion to suppress, the trial court heard testimony from two police officers alleging Maybank consented to their entry. The trial court also heard testimony from Maybank alleging he did not consent to the officers' entry. After hearing all the testimony, and weighing the credibility of the witnesses, the trial court found Maybank consented to the officers' request to enter his motel room. Because the trial court's ruling is supported by sufficient evidence in the record, we find no error.

### III. Resisting Arrest

Maybank next asserts he was permitted to resist the officers' attempt to arrest him because the arrest was unlawful. We disagree.

To determine whether Maybank could have lawfully resisted arrest, this Court must consider

> whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing [Maybank] had committed or was committing an offense.

*Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *see also State v. Robinson*, 335 S.C. 620, 634, 518 S.E.2d 269, 276 (Ct.App.1999) ("Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officers [sic] disposal."). The trial court determined the officers had probable cause to arrest May-

presence of intervening circumstances; and the purpose and flagrancy of the misconduct").

bank. Given the totality of the circumstances surrounding his arrest, we agree.

When the officers looked into Maybank's motel room, they observed marijuana lying in plain view on a table. Furthermore, when Maybank opened his hand, the officers saw crack cocaine. Therefore, at the moment the arrest was made, the officers had probable cause to believe Maybank "had committed or was committing an offense."[5] *See Beck,* 379 U.S. at 91, 85 S.Ct. 223. Because the basis for Maybank's arrest was lawful, Maybank was not permitted to resist.[6]

## CONCLUSION

For the foregoing reasons, we hold the trial court properly denied Maybank's motion to suppress. Therefore, Maybank's convictions for possession of crack cocaine, possession of cocaine, resisting arrest, and assaulting a police officer while resisting arrest are

**AFFIRMED.**

HEARN, C.J., and GOOLSBY, J., concur.

---

5. *See* S.C.Code Ann. §§ 44–53–190(d)(10) & 44–53–370(c), (d)(2) (2002) (stating it is unlawful for a person to possess marijuana); S.C.Code Ann. § 44–53–375 (2002) (stating it is unlawful for a person to possess crack cocaine).

6. *See* S.C.Code Ann. § 16–9–320(A), (B) (Supp.2001) (stating it is unlawful for a person to resist a lawful arrest performed by a law enforcement officer).