575 S.E.2d 852

The STATE, Respondent,

v.

Anthony Leroy MATTISON, Appellant.

No. 3590.

Court of Appeals of South Carolina.

Submitted Dec. 9, 2002.

Decided Jan. 21, 2003.

578

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor Druanne D. White, of Anderson, for Respondent.

ANDERSON, J.:

Anthony Leroy Mattison appeals his conviction for possession of crack cocaine. He argues the trial court erred in denying his motion to suppress evidence where (1) his consent was coerced and involuntary; (2) the search exceeded the scope of his consent; (3) the search was not based on reasonable suspicion; and (4) the search exceeded any scope authorized by *Terry v. Ohio*.[1] We affirm.[2]

## *FACTS/PROCEDURAL BACKGROUND*

On January 7, 2000, Patrol Officer William Jones, with the City of Anderson Police Department, stopped a car traveling in Anderson because the car had no rear license plate. There

---

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

were three people in the car. Mattison was seated in the back of the car, while the driver and another passenger were seated in the front.

When Officer Jones approached the vehicle, he observed the front seat passenger "concealing something in his left hand and reaching between his legs." A consensual search of the front seat passenger revealed he possessed crack cocaine. He was subsequently arrested.

Officer Jones noticed Mattison in the back seat of the car. Jones opened his door and asked Mattison, "Do you have anything on you?" Mattison replied, "No." Jones then asked Mattison, "Do you mind if I check?" Mattison responded, "Go ahead." At Jones' request, Mattison exited the vehicle unassisted. Jones conducted a pat-down of Mattison. Officer Jones testified:

> When I got around to the waistband area, [Mattison] kept, in a nervous manner, reaching his hands back down, which led [to] more suspicion that there might be something down there. He kept putting them down. I told him several times, 'Keep your hands on the hood or on the trunk.' He complied. He was very cooperative.
>
> At that point, I checked the crotch area and I felt a hard rock-like substance, which I immediately recognized to be crack cocaine.

Jones asked Mattison, "What do we have here?" Mattison replied, "Oh, that's my thing." As a safety precaution, Jones placed handcuffs on Mattison.

Jones unbuttoned the front of Mattison's pants and, while wearing a glove, retrieved a plastic bag wrapped in yellow tissue paper located near Mattison's genitalia. The plastic bag contained approximately 6 grams of crack cocaine.

At no time did Mattison verbally express a desire for the pat-down to cease. Officer Jones stated that Mattison did not appear to be under the influence of drugs or alcohol. Jones declared there was no question in his mind that Mattison "gave voluntary consent" to the pat-down. Jones asserted he did not have his gun drawn and used no coercion to solicit Mattison's consent.

With the assistance of a police dog trained to detect illegal drugs, officers found more crack cocaine under the driver's seat. The driver of the car was placed under arrest.

At the arrest scene, four police officers, including Officer Jones, were present. In addition, Staff Chaplain Lloyd Robinson was riding in the car with Officer Jones and was at the scene. Finally, Randall Human accompanied one of the officers to the scene. There were four police cars at the arrest location.

Mattison was charged with possession of crack cocaine with intent to distribute and possession of crack cocaine with intent to distribute within proximity of a park.

At trial, Mattison moved to suppress evidence found from his frisk by the police officer, claiming his consent was not given voluntarily. In denying Mattison's suppression motion, the trial court, considering the totality of the circumstances, ruled Mattison freely and voluntarily consented to the search because he did not think police would search his genital area for drugs. Additionally, the court concluded that, after Mattison gave consent, he "stood by silently while the search occurred[,] without objection." At the close of evidence, Mattison moved for a directed verdict "on the basis that the evidence that has been identified as crack cocaine should have been excluded." He further requested "that Officer Jones and anybody else[']s testimony that [Mattison] consented should be excluded under all the arguments" he made at the previous motion to suppress hearing. The court denied the motions.

A jury convicted Mattison of simple possession of crack cocaine but found him not guilty of the charge of possession of crack cocaine with intent to distribute within proximity of a park.

## ISSUES

I. Was Mattison's consent coerced and involuntary?

II. Did the pat-down search of Mattison exceed the scope of his consent?

III. Was the pat-down search based on reasonable suspicion?

IV. Did the pat-down search exceed any scope authorized by *Terry v. Ohio?*

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Missouri,* Op. No. 3563, 352 S.C. 121, 572 S.E.2d 467 (Ct.App.2002). This Court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105 (2000). The appellate court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial judge's ruling is supported by any evidence. *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829.

The admission or exclusion of evidence is left to the sound discretion of the trial judge. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Saltz,* 346 S.C. 114, 551 S.E.2d 240 (2001). A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001); *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000). An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. McDonald,* 343 S.C. 319, 540 S.E.2d 464 (2000).

## LAW/ANALYSIS

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. The South Carolina Constitution provides similar protection against unlawful searches and seizures. *See* S.C. Const. art. I, § 10. Evidence obtained in violation of the Fourth Amendment is inadmissible in both state and federal court. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *State v. Forrester,* 343 S.C. 637, 541 S.E.2d 837 (2001); *State v. Missouri,* Op. No. 3563, 352 S.C. 121, 572 S.E.2d 467 (Ct.App.2002); *State v. Austin,* 306 S.C. 9, 409 S.E.2d 811 (Ct.App.1991).

584

## I. Voluntary Nature of Consent to Search

Mattison contends the consent to search was coerced, rendering it involuntary. We disagree.

Whether a consent to search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *State v. Wallace,* 269 S.C. 547, 238 S.E.2d 675 (1977); *State v. Brannon,* 347 S.C. 85, 552 S.E.2d 773 (Ct.App.2001); *State v. Dorce,* 320 S.C. 480, 465 S.E.2d 772 (Ct.App.1995); *see also Palacio v. State,* 333 S.C. 506, 511 S.E.2d 62 (1999) (existence of consent is determined from totality of circumstances). The State bears the burden of establishing the voluntariness of the consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Harris,* 277 S.C. 274, 286 S.E.2d 137 (1982); *Wallace,* 269 S.C. at 550, 238 S.E.2d at 676; *Brannon,* 347 S.C. at 89–90, 552 S.E.2d at 775; *Dorce,* 320 S.C. at 482, 465 S.E.2d at 773; *see also Palacio,* 333 S.C. at 514, 511 S.E.2d at 66 (on motion to suppress, State has burden of proving validity of consent).

The "totality of the circumstances" test applies whether the consent was given in a non-custodial or custodial situation. *Wallace,* 269 S.C. at 550, 238 S.E.2d at 676; *Brannon,* 347 S.C. at 90, 552 S.E.2d at 775. In a custodial situation, the custodial setting is a factor to be considered in determining whether consent was voluntarily given. *Wallace,* 269 S.C. at 552, 238 S.E.2d at 677; *Brannon,* 347 S.C. at 90, 552 S.E.2d at 775. Custody alone, however, is not enough in itself to demonstrate a coerced consent to search. *Brannon,* 347 S.C. at 90, 552 S.E.2d at 775; *see also United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (finding involuntary consent was not shown where defendant was arrested and in custody, but consent was given while on a public street and not in confines of a police station, he was given his *Miranda* warnings, and he was advised the results of the search of his car could be used against him); *Wallace,* 269 S.C. at 552, 238 S.E.2d at 677 (holding that custody itself is not enough to invalidate a consent search).

The issue of voluntary consent, when contested by contradicting testimony, is an issue of credibility to be deter-

mined by the trial judge. *State v. Maybank,* Op. No. 3566, 352 S.C. 310, 573 S.E.2d 851 (Ct.App.2002); *Dorce,* 320 S.C. at 482, 465 S.E.2d at 773. A trial judge's conclusions on issues of fact regarding voluntariness will not be disturbed on appeal unless so manifestly erroneous as to be an abuse of discretion. *State v. Rochester,* 301 S.C. 196, 391 S.E.2d 244 (1990) (dealing with voluntariness of a statement); *State v. Greene,* 330 S.C. 551, 499 S.E.2d 817 (Ct.App.1997).

 There is no dispute that Mattison consented to Officer Jones's request to search him without imposing limits on the scope of the search. No evidence indicates Mattison gave consent while incompetent. Moreover, the record reveals no overt act, threat of force, or other form of coercion. Mattison claims the fact that he was "surrounded" by a drug dog and four police officers with squad cars flashing blue lights demonstrated a "show of force" that indicates coercion. This argument lacks merit, as their presence was necessary at a crime scene. Thus, we cannot say as a matter of law that this activity constituted coercion, because the drug dog was instrumental in finding drugs in the car and the multiplicity of suspects warranted the plethora of law enforcement officers.

Based on the evidence in the record, we find no abuse of discretion in the trial court's ruling that Mattison's consent was voluntarily given.

## II. Exceeding Scope of Search

Mattison maintains that, if he did voluntarily consent to a search, Officer Jones exceeded the permissible scope when he proceeded to search Mattison's groin area. We disagree.

 Under our state constitution, suspects are free to limit the scope of the searches to which they consent. *State v. Forrester,* 343 S.C. 637, 541 S.E.2d 837 (2001). "When relying on the consent of a suspect, a police officer's search must not exceed the scope of the consent granted or the search becomes unreasonable." *Id.* at 648, 541 S.E.2d at 843. Even in a situation where police have received a general and unqualified consent, " 'the police do not have carte blanche to do whatever they please.' " *Id.* at 648–49, 541 S.E.2d at 843 (quoting 3 Wayne R. LaFave, *Search and Seizure* § 8.1(c), at 612 (3d ed. 1996)). The scope of the consent is measured by a test of

" 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297, 302 (1991).

■ Here, Mattison's co-passenger had just been searched and arrested after the police found crack cocaine. Immediately thereafter, in response to Officer Jones's question, "Do you have anything on you," Mattison replied, "No." Officer Jones then asked, "Do you mind if I check?" Mattison responded, "Go ahead." Mattison imposed no limits on the scope of the search he granted in response to Officer Jones's request to search him. Mattison clearly consented to a search of his *body* for *drugs.* We conclude a reasonable person would have understood that consent to encompass a search of Mattison's groin area. *See United States v. Rodney,* 956 F.2d 295 (D.C.Cir.1992) (noting that genital area is a frequent hiding place for drugs).

■ The United States Supreme Court has described a typical pat-down search as including a thorough search of the suspect's "arms and armpits, waistline and back, *the groin and area about the testicles,* and entire surface of the legs down to the feet." *Terry v. Ohio,* 392 U.S. 1, 17 n. 13, 88 S.Ct. 1868, 1877 n. 13, 20 L.Ed.2d 889, 903 n. 13 (1968) (emphasis added). A suspect's "objectively reasonable" consent to a body search indicates consent to a "traditional frisk search," including a "sweeping motion" over the outer garments of the crotch area. *See United States v. Ashley,* 37 F.3d 678 (D.C.Cir.1994). Mattison's generalized consent authorized the kind of "traditional frisk search" undertaken here. Furthermore, once Officer Jones identified the presence of the crack cocaine, he was allowed to remove it. *See United States v. Mattarolo,* 209 F.3d 1153 (9th Cir.2000).

### III. Withdrawal of Consent

Mattison asserts he withdrew consent when he attempted to lower his hands as the officer searched his groin area. However, Mattison verbally gave unequivocal consent and never stated that he withdrew his consent to the search.

Conduct falling short of "an unequivocal act or statement of withdrawal" is not sufficiently indicative of an intent to withdraw consent. *United States v. Alfaro*, 935 F.2d 64, 67 (5th Cir.1991). Effective withdrawal of a consent to search requires unequivocal conduct, in the form of either an act, statement or some combination of the two, that is inconsistent with consent previously given. *Burton v. United States*, 657 A.2d 741 (D.C.1994). We find Mattison's act of lowering his hands falls far short of an unequivocal act or statement of withdrawal, something found in most withdrawal of consent cases. *See United States v. Dichiarinte*, 445 F.2d 126, 128–29 (7th Cir.1971) (stating defendant exclaimed, "The search is over. I am calling off the search."); *United States v. Miner*, 484 F.2d 1075, 1076 (9th Cir.1973) (finding a withdrawal of implied consent to airport search where prospective airline passenger balked at search of luggage, saying, "No, it's personal."); *United States v. Bily*, 406 F.Supp. 726, 728 (E.D.Pa.1975) (holding that defendant's statement, "That's enough. I want you to stop," was a withdrawal of consent); *United States v. Ibarra*, 731 F.Supp. 1037 (D.Wyo.1990) (noting motorist's act of closing and locking trunk of his car after a police officer's consensual warrantless search of trunk constituted withdrawal of that consent and barred further search); *Cooper v. State*, 480 So.2d 8 (Ala.Crim.App.1985) (ruling that although first search of airplane was pursuant to voluntarily and freely given consent of defendant, his act of locking plane after he taxied plane to hanger area and before being driven by police to nearby motel, effectively revoked defendant's consent to any future searches); *State v. French*, 203 Neb. 435, 279 N.W.2d 116, 119–20 (1979) ("[D]efendant's unequivocal 'no' could only be reasonably interpreted as revoking whatever consent might have previously been given, if any."). Instead, Mattison's hand movement more closely resembles conduct within the ambit of *United States v. Brown*, 884 F.2d 1309 (9th Cir.1989), where a defendant who consented to a search of his suitcase, but later became extremely reluctant to relinquish his suitcase keys, was held not to have withdrawn his consent.

## IV. Reasonable Suspicion

Mattison alleges the officer's search was not based on reasonable suspicion as required under *Terry v. Ohio*, 392 U.S.

1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We do not reach this issue because we previously found Mattison voluntarily consented to a search of his person.

## V. Exceeding Scope Under *Terry*

Mattison argues the officer's search exceeded the scope permissible under *Terry*. We do not reach this issue because we previously found Mattison voluntarily consented to a search of his person.

## *CONCLUSION*

Accordingly, Mattison's conviction is

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.