The State appeals from the trial courts suppression of evidence against 
Terrence Damon Johnson (Johnson)

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Appellant,
 
 
 

v.

 
 
 
Terrence Damon Johnson,       
Respondent.
 
 
 

Appeal From Charleston County
A.   Victor Rawl, Circuit Court Judge

Unpublished Opinion No. 2003-UP-757
Heard December 9, 2003  Filed December 
 23, 2003

AFFIRMED IN PART, REMANDED IN PART

 
 
 
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, 
 Senior Assistant Attorney General Mark Rapoport, of Columbia; and Solicitor 
 Ralph E. Hoisington, of Charleston, for Appellant.
Anthony B. ONeill, of 
 Charleston, for Respondent.
 
 
 

PER CURIAM:  The 
 State appeals the trial courts suppression of evidence against Terrence Damon 
 Johnson.  We affirm in part and remand in part.
FACTS
The Charleston City Police Department, as part 
 of its attempt to reduce drug-related violence in the city, formed criminal 
 and narcotics patrol units.  On November 21, 2000, Officers Keith Wilson 
 and Jeffrey Booker, while on special detail with such a unit, observed Johnsons 
 burgundy Jaguar coming from a high-crime area in the Ardmore subdivision known 
 as the hole. When the car failed to stop at a stop sign and use a proper turn 
 signal, Wilson and Booker initiated a traffic stop.  According to Wilson, 
 when he made the stop, Johnson was moving around the center console the entire 
 time and acting visibly nervous.
Wilson and Booker approached the automobile and 
 requested Johnsons license and registration.  Johnson provided them.  Based 
 on Wilsons prior experience, Johnsons actions, and the area in which the stop 
 took place, he then asked Johnson to exit the vehicle.  After Johnson 
 complied, Wilson patted him down, advising Johnson the frisk was for your safety 
 as well as ours.  During the pat-down, Wilson felt a large bulge in 
 Johnsons coat pocket, which Johnson told him was a grand.
Wilson then requested permission to search the 
 car and Johnson replied that he didnt care.  Booker opened the console, 
 in which he discovered a purple Crown Royal bag with two cookies of crack cocaine 
 and money inside.  Johnson attempted to withdraw his consent, but 
 Wilson and Booker placed him under arrest.  Five other officers from 
 the unit who had arrived at the scene searched the trunk of the car.  There, 
 they discovered a red strawberry girl plastic lunch container that contained 
 crack cocaine and powder cocaine. 
Some time later, at the police station, the police 
 issued two traffic tickets to Johnsonone for disregarding a stop sign and the 
 other for failing to use a proper turn signal.  In February 2001, the 
 grand jury indicted Johnson for possession of crack cocaine with intent to distribute 
 within proximity of a school and for trafficking cocaine.  The following 
 month, the grand jury indicted him for trafficking crack cocaine and for possession 
 of cocaine with intent to distribute within proximity of a school. 
Prior to trial on the drug charges, Johnson moved 
 to suppress the evidence found in his car.  Johnson argued he did not voluntarily 
 consent to the search of his vehicle and without such consent the search was 
 without probable cause or justification.  As a result, Johnson argued all evidence 
 should be suppressed as fruits of the poisonous tree.  The trial court agreed 
 and suppressed the evidence.  The State appeals.
LAW/ANALYSIS
1.  The trial court found the State failed to provide 
 any articulable reasonable suspicion that Johnson committed a serious crime 
 in order to expand the investigatory nature of the detention beyond a traffic 
 stop.  We agree with Johnson that this finding is supported by the evidence 
 and must therefore be affirmed. [1] 
As the trial court remarked, [t]he only 
 articulable suspicion that gives  rise to something other than a traffic stop 
 as enunciated by Officer Wilson is movement toward the console, high crime area.  
 Thats it.  We cannot fault the trial court for holding that these factors 
 did not warrant detaining Johnson for purposes beyond the traffic stop.  Regarding 
 Johnsons suspicious movements in the car after being stopped, the trial court 
 noted, If the man had his wallet in his center console, its perfectly reasonable 
 and not an articulable suspicion that he may have been trying to get his drivers 
 license and vehicle registration out of the center console or over the visor 
 . . . .  As to the fact that the events leading to Johnsons arrest took place 
 in a high crime area, we likewise find no abuse of discretion in the trial courts 
 reasoning that [y]ou dont normally run around giving traffic tickets at 9:30 
 or ten oclock at night in Ardmore subdivision. [2] 
2.  The fact that Johnsons detention 
 exceeded the purpose of a routine traffic stop, however, does not necessarily 
 invalidate his consent to the search of his car or otherwise render it involuntary. 
 [3]   Moreover, we agree with the States contention that the trial 
 courts ruling cannot be read to address the issue of whether, notwithstanding 
 the finding that the detention was improper,  Johnsons consent to the search 
 of his car could nevertheless be considered voluntary.
As our supreme court has suggested, the presence 
 of attenuating circumstances that remove the taint of the unlawful stop from 
 the consent to search [4] could serve as a basis for admitting evidence obtained 
 during a search performed under such circumstances.  In any event, although 
 the State has the burden to show voluntariness, [w]hether a consent to search 
 was voluntary or the product of duress or coercion, express or implied, is a 
 question of fact to be determined from the totality of the circumstances. [5]   In the present case, we note the solicitor argued 
 that the officer had reasonable suspicion to question Johnson for consent 
 and was making a fast call. 
We hold that the determination as to whether these 
 factors were sufficient to override any alleged impropriety surrounding Johnsons 
 detention is best left to the trial court. 
 [6]   We therefore remand this case to the trial court for a ruling 
 on whether, considering the totality of the circumstances test, the State 
 has met its burden to show that Johnsons consent to the search of his car was 
 voluntary. The trial court shall use only the present record to make this finding.
AFFIRMED IN PART, REMANDED IN PART.
GOOLSBY and ANDERSON, JJ., and CURETON, A.J., 
 concur.       

 
 
 [1]   See State v. Brockman, 339 S.C. 57, 66, 528 
 S.E.2d 661, 666 (2000) (holding that in an appeal from a motion to suppress 
 on Fourth Amendment grounds, the appellate court would apply a deferential 
 standard of review and affirm if there is any evidence to support the ruling).

 
 
 [2]    Cf. Sikes v. State, 323 S.C. 28, 31, 448 S.E.2d 
 560, 562 (1994) (holding the petitioner had received ineffective assistance 
 of counsel because counsel had failed to move to suppress evidence on Fourth 
 Amendment grounds and noting [p]etitioner was merely a passenger in a car 
 with paper dealer tags that had the misfortune of being in a high crime area).

 
 
 [3]   See State v. Robinson, 306 S.C. 399, 402, 412 
 S.E.2d 411, 414 (1991) (A consent to search procured during an unlawful stop 
 is invalid unless such consent is both voluntary and not an exploitation 
 of the unlawful stop.); State v. Mattison, 352 S.C. 577, 584, 575 
 S.E.2d 852, 855 (Ct. App. 2003) (In a custodial situation, the custodial 
 setting is a factor to be considered in determining whether consent was voluntarily 
 given.  Custody alone, however, is not enough in itself to demonstrate a coerced 
 consent to search.) (citations omitted).

 
 
 [4]   Robinson, 306 S.C. at 402, 412 S.E.2d at 414.

 
 [5]   State v. Wallace, 269 S.C. 
 547, 550, 238 S.E.2d 675, 676 (1977).

 
 
 [6] See Brockman, 339 S.C. at 66, 528 S.E.2d at 666 
 (citing the rule that voluntariness of consent to search [is] solely a question 
 of fact); cf. Mattison, 352 S.C. at 584-85, 575 S.E.2d at 856 
 (The issue of voluntary consent, when contested by contradicting testimony, 
 is an issue of credibility to be determined by the trial judge.).