# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Kenneth Darrell Morris, II, Petitioner.

Appellate Case No. 2011-203786

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from York County
The Honorable John C. Hayes, III, Circuit Court Judge

---

Opinion No. 27488
Heard June 24, 2014 – Filed January 28, 2015

---

## AFFIRMED

---

Johnny Gardner, of Johnny Gardner Law Group, P.A., of
Conway, for Petitioner.

Attorney General Alan M. Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Salley W. Elliott, Assistant
Attorney General Mark R. Farthing, all of Columbia, and
Kevin S. Brackett, of York, for Respondent.

---

**JUSTICE HEARN:** Kenneth Darrell Morris, II challenges the trial court's denial of his motion to suppress ecstasy and marijuana discovered during a traffic stop, arguing they were obtained as the fruits of an illegal search and seizure in violation of the Fourth Amendment. We disagree, finding the officers had both reasonable suspicion of criminal activity and probable cause to conduct a warrantless search of the entire vehicle. Accordingly, we affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Morris was driving on Interstate 77 through York County with Brandon Nichols in a rental vehicle. Officer L.T. Vinesett, Jr. and Constable W.E. Scott observed Morris commit a traffic violation by following a truck too closely. The officers followed Morris as he exited the interstate and initiated a traffic stop as he pulled into a gas station.

Vinesett approached the passenger side of the vehicle and requested that Morris produce his driver's license and registration. Vinesett then asked Morris to exit the vehicle and accompany him to the police cruiser. As Vinesett ran Morris's license, he asked Morris several questions about where the two men were traveling from and what they did there. Morris told Vinesett they went "to see some girls" in Atlanta and were on their way back to North Carolina. Vinesett returned to the rental vehicle and spoke briefly with Nichols, who stated he and Morris were returning from Atlanta after going to see a cousin play basketball.

Vinesett radioed Officer Gibson of the York County Police Department for a K-9 unit. While waiting for the K-9 unit to arrive, Scott conducted a consensual search of Morris, which yielded no contraband. After stating repeatedly that he had to use the restroom, Morris was escorted to the restroom by Scott.

Nichols also asked to use the restroom. He exited the vehicle and consented to a search of his person by Vinesett, which yielded no contraband. Vinesett told Nichols he would have to wait to use the restroom until Morris returned. Vinesett asked Nichols if he smoked marijuana earlier in the day and said he swore he smelled marijuana when Nichols exited the vehicle. Nichols stated the smell was from a Black & Mild cigar and that he did not smoke marijuana. A few minutes later, Gibson arrived to perform a K-9 search of the vehicle with Justice, a trained drug detection dog.

Vinesett and Gibson asked Nichols for his consent to search the vehicle, which Nichols refused, stating there was no contraband. Gibson then escorted Justice around the exterior of the vehicle twice; however, Justice did not alert at

any point. Vinesett then conducted a search of the vehicle, beginning with the interior and proceeding to the trunk. Although he did not find any contraband in the passenger compartment, Vinesett discovered a plastic bag in the trunk containing 393 ecstasy pills concealed within a small gift bag. Following the discovery of ecstasy, Morris and Nichols were placed under arrest. During a more thorough search after the arrests, officers discovered a plastic bag containing a half a pound of marijuana underneath the spare tire.

Morris was indicted on charges of trafficking ecstasy and possession of marijuana with intent to distribute. Prior to trial, Morris moved to suppress the drugs as the fruit of an illegal search and seizure. At the hearing, Vinesett testified he is a member of the York County Highway Interdiction Team (HIT Team). He stated that as part of his HIT training, he has attended several national training sessions on highway interdiction and drug enforcement. When questioned about the stop, Vinesett noted he smelled an odor of marijuana when he first approached the vehicle and spoke to Morris and Nichols. He stated he also observed several hollowed out Phillies Blunt[1] cigars in the center console of the vehicle, and loose blunt tobacco scattered over the frontal interior of the vehicle. He testified that although the smell of marijuana was the biggest indicator of criminal activity, other indicators of drug trafficking were present, including the inconsistent stories about traveling to Atlanta, the fact the vehicle was rented, and the presence of several consumed cans of Red Bull. When asked about the K-9 search, Vinesett conceded this was a fair indicator that no drugs were present, but stated Justice failed to keep his nose on the vehicle as he usually did during a search and instead frequently stopped to shake the water off, explaining he assumed Justice did not like being out in the rain.

Ultimately, the trial court denied Morris' motion, finding the officers had reasonable suspicion of criminal activity based on Vinesett's testimony that he smelled marijuana and the presence of hollowed out blunts.[2] In addition, the court stated there was no requirement that a stop cease because the police dog failed to alert, and at a length of roughly thirteen minutes, the traffic stop was not excessively long, nor unreasonably extended. Finally, the trial court found the

---

[1] Phillies Blunts are an inexpensive brand of cigar. Vinesett testified that people "hollow [the blunt] out and place the marijuana in there, so if you did see them riding down the road smoking anything, it would look like they were just smoking a [Phillies] blunt."

[2] The court analogized the hollowed out blunts to finding a crack pipe within a vehicle.

officers had probable cause to search the vehicle, but did not articulate the specific reasoning for this finding.

Morris was convicted of trafficking ecstasy and simple possession of marijuana. The court sentenced Morris to thirty years' imprisonment and fined him $50,000.00 for the ecstasy charge. It additionally sentenced him to a year imprisonment for the marijuana charge, to run concurrently. Morris appealed his conviction to the court of appeals which affirmed in *State v. Morris*, 395 S.C. 600, 720 S.E.2d 468 (Ct. App. 2011). We granted certiorari.

## ISSUES PRESENTED

I.    Did the court of appeals err in affirming the trial court's finding that the officers had reasonable suspicion of criminal activity to extend the length of the traffic stop?

II.    Did the court of appeals err in affirming the trial court's finding that the officers had probable cause to conduct a full search of the entire vehicle?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). "When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling." *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011). "The appellate court will reverse only when there is clear error." *State v. Missouri*, 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004).

## LAW/ANALYSIS

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop and the detention of persons during such a stop constitutes a seizure. *State v. Maybank*, 352 S.C. 310, 315, 573 S.E.2d 851, 854 (Ct. App. 2002).

## I.    REASONABLE SUSPICION

Morris argues the trial court erred in finding the officers had reasonable suspicion to extend the scope of the traffic stop in violation of his Fourth Amendment rights. In addition, he argues the officers illegally prolonged the duration of the traffic stop. We disagree.

In carrying out a routine traffic stop, law enforcement may request a driver's license and vehicle registration, run a computer check, and issue a citation; however, any further detention for questioning is beyond the scope of the stop and therefore illegal unless the officer has reasonable suspicion of a serious crime. *State v. Tindall*, 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010). To determine whether reasonable suspicion exists, an officer, by a totality of the circumstances, must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). Reasonable suspicion does not entail a set of legal rules, but "entails common sense, nontechnical conceptions that deal with factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004).

Vinesett testified to the presence of several facts which from his experience and training, indicated drug trafficking. Vinesett stated that when he approached the passenger side of the vehicle, he detected the odor of marijuana[3] and observed several hollowed out Phillies Blunt cigars in a cup in the center console. Vinesett stated that in his experience, individuals unroll Phillies Blunt cigars, discard the tobacco, and then reroll them with marijuana to appear as if the individual is smoking a normal cigar. Additionally, he testified that Morris and Nichols gave different stories of their purpose in traveling to Atlanta. He noted there were several empty Red Bull cans, indicative of a need to stay awake for long periods of time while driving. Vinesett also noted that Morris drove a rented vehicle, which is an indicator of drug trafficking. Looking at the totality of the circumstances from the point of view of the reasonably prudent police officer, we find there is evidence in the record to support the trial court's conclusion that a reasonable suspicion of criminal activity existed.

Furthermore, we believe Morris's claim that the length of the stop was unduly prolonged is without merit. In total, Morris's traffic stop lasted roughly thirteen minutes. Recently, we held ten minutes was a reasonable amount of time for an initial traffic stop, and that off-topic questions did not unduly extend the duration of the stop. *State v. Provet*, 405 S.C. 101, 109, 747 S.E.2d 453, 458

---

[3] Morris asks us to reexamine the record and make a new credibility determination of Vinesett's testimony. Specifically, Morris suggests that because Vinesett did not tell Morris that he smelled marijuana at the beginning of the stop, Vinesett's testimony that he smelled marijuana lacks credibility. However, the trial court found Vinesett's testimony credible, and that determination is left to its discretion. *See State v. Tutton*, 354 S.C. 319, 325–26, 580 S.E.2d 186, 190 (Ct. App. 2003).

(2013). We cannot say a thirteen minute stop was unduly prolonged or burdensome, especially where a reasonable suspicion to extend the stop existed at the outset. At no point did the officers leave Morris and Nichols detained without purpose or instruction. In addition, we note that Morris and Nichols' frequent requests to use the restroom throughout the entirety of the stop contributed to its duration.

Because there is evidence in the record that supports the finding of a reasonable suspicion of criminal activity, we find no error in the court of appeals' affirmance of the trial court on this issue.

## II.  PROBABLE CAUSE

Morris also argues the trial court erred in determining probable cause existed to search the rental vehicle. In particular, he argues officers lacked probable cause to search the trunk of the car. We disagree.

The Fourth Amendment requires that a warrant for search and seizure be supported by probable cause. U.S. Const. amend. IV. Therefore, a warrantless search is per se unreasonable and violative of the Fourth Amendment unless the search falls within one of several well-recognized exceptions to the warrant requirement. *State v. Weaver*, 374 S.C. 313, 319, 649 S.E.2d 479, 482 (2007). These exceptions "include (1) search incident to a lawful arrest, (2) 'hot pursuit', (3) stop and frisk, (4) automobile exception, (5) the 'plain view' doctrine, and (6) consent." *State v. Bailey*, 276 S.C. 32, 36, 274 S.E.2d 913, 915 (1981). The automobile exception to requiring a search warrant exists in recognition of "the ready mobility of automobiles and the potential that evidence may be lost before a warrant is obtained" and "the lessened expectation of privacy in motor vehicles which are subject to government regulation." *State v. Cox*, 290 S.C. 489, 491, 351 S.E.2d 570, 571 (1986). To survive a Fourth Amendment challenge to a warrantless search, the State must establish the officer had probable cause and demonstrate one of the exceptions to the prohibition against warrantless searches and seizures applies. *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013).

Similar to reasonable suspicion, probable cause is a fluid concept. Probable cause is a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996). Probable cause to conduct a search exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief

that contraband or evidence of a crime will be found." *Id.* at 696. "The principle components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *Id.* Therefore, determining whether an officer has probable cause to conduct a warrantless search depends on the totality of the circumstances. *State v. Brannon*, 347 S.C. 85, 92, 552 S.E.2d 773, 776 (Ct. App. 2001).

We find the record supports the conclusion that Vinesett had probable cause to search the entire vehicle. The scope of a "warrantless search . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). Although Morris argues that because Vinesett failed to find drugs in the passenger compartment of the vehicle, he lacked probable cause to search the trunk, this contention mistakes the object for which Vinesett had probable cause to search. Vinesett was not simply looking for burnt marijuana based on the smell he detected at the inception of the stop. In our view, it is clear the object of his search was raw marijuana. Vinesett observed other indicators of drug possession or trafficking that led him to the reasonable belief that contraband would be found within the vehicle. The unrolled and hollowed Phillies Blunt cigars in the console suggest the future intent of marijuana use, not recent use. Additionally, Morris and Nichols told inconsistent stories, drove a rental car, and had several empty cans of Red Bull. Although those factors appear banal independently, cumulatively they indicated drug trafficking to Vinesett, based on his training and expertise. Accordingly, under our any evidence standard of review, we find the record supports the conclusion Vinesett reasonably believed the contraband he suspected could be found in the trunk of the vehicle. We therefore hold the court of appeals did not err in affirming the trial court's finding Vinesett had probable cause to search the entire vehicle.[4]

---

[4] Morris contends the failure of the drug dog to alert militates against the conclusion Vinesett had probable cause to search the trunk. Although the failure to alert is certainly a consideration in determining probable cause under the totality of the circumstances, it is not dispositive. Other jurisdictions have held that if a drug detection dog fails to alert during a search, it does not defeat probable cause. *See United States v. Davis*, 430 F.3d 345, 367 (6th Cir. 2005) (citing cases and acknowledging "a near universal recognition that a drug-sniffing dog's failure to alert does not necessarily destroy probable cause"); *United States v. Ramirez*, 342

## CONCLUSION

Accordingly, because we find evidence in the record to support the trial judge's findings that Vinesett had reasonable suspicion to extend the traffic stop and probable cause to search the entire vehicle, we affirm the court of appeals.

**TOAL, C.J., and KITTREDGE, J., concur. PLEICONES, J., dissenting in a separate opinion in which BEATTY, J., concurs.**

---

F.3d 1210, 1213 (10th Cir. 2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."); *McKay v. State*, 814 A.2d 592, 599 (Md. Ct. Spec. App. 2002) ("[A] drug sniffing dog's failure to detect drugs does not automatically negate probable cause."); *see also Illinois v. Caballes*, 543 U.S. 405, 411–412 (2005) (Souter, J., dissenting) ("The infallible dog . . . is a creature of legal fiction . . . their supposed infallibility is belied by judicial opinions describing well-trained animals sniffing and alerting with less than perfect accuracy, whether owing to errors by their handlers [or] the limitations of the dogs themselves . . . ."). Furthermore, Vinesett gave a reasonable explanation for why he believed the dog did not conduct a proper search.

**JUSTICE PLEICONES:**  I respectfully dissent.  In my view, it is a close question whether petitioner's traffic stop was unlawfully extended.  *See State v. Hewins*, 409 S.C. 93, 760 S.E.2d 814 (2014).  In any case, I would reverse the Court of Appeals' affirmance of the denial of petitioner's suppression motion.  In my opinion, once the drug dog failed to alert, the already marginal "objectively reasonable suspicion" to search the vehicle and its trunk evaporated.[5]  *State v. Provet*, 405 S.C. 101, 747 S.E.2d 453 (2013).

I would reverse and remand for a new trial.

**BEATTY, J., concurs.**

---

[5] I am not persuaded by the majority's reliance on the dissent in *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005).  In *Davis*, the majority noted the dissent relied exclusively on cases where "even without the dog's alert there was probable cause to justify a more extended detention, whereas in this case there was only the more limited basis of reasonable suspicion."  *Id*. at 359.  As in *Davis*, here the State had at most only a "reasonable suspicion" that petitioner possessed illegal drugs.