The STATE, Respondent,

v.

**Joshua William PORCH, Appellant.**

Appellate Case No. 2013–002531
Opinion No. 5435

Court of Appeals of South Carolina.

Heard May 3, 2016
Filed August 3, 2016
Rehearing Denied September 20, 2016

---

622

Michael J. Anzelmo and Matthew A. Abee, both of Nelson Mullins Riley & Scarborough, LLP, of Columbia; and Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General J. Anthony Mabry, and Solicitor Daniel Edward Johnson, all of Columbia, for Respondent.

HUFF, J.

Joshua William Porch appeals his conviction for murder, arguing the trial court erred in failing to void the State's arrest warrant pursuant to *Franks v. Delaware*.[1] Porch also argues the trial court erred by limiting Porch's testimony in violation of the Confrontation Clause. We affirm.

---

1. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (allowing defendants to challenge a probable cause determination after the issuance of a search warrant in limited circumstances).

## FACTUAL/PROCEDURAL HISTORY

In the early morning hours of May 13, 2006, Justin Mallory (Mallory) found his wife, Nikea Mallory (Victim), dead in the family's apartment in Richland County. Victim suffered blunt force trauma to the head, a bruise on her neck, a stab wound on the right side of her neck, and a stab wound on her right eyebrow. The stab wound to Victim's neck was the fatal injury. Hours after discovering Victim's body, Mallory was charged with Victim's murder.

During the murder investigation, Mallory told officers they should talk to Joshua Porch, who lived near Mallory. Investigator Randy Strange interviewed Porch and his wife. Porch told Investigator Strange he was not in the Victim's apartment the night of the murder.

Police interviewed Porch again on June 27, 2007, after they discovered unidentified male DNA at the crime scene. Porch agreed to provide officers with a DNA sample and told them that he was in the Victim's apartment the day before the murder. Porch stated he cut himself while he was peeling or cutting an apple for his child and he attempted to clean up the blood with paper towels in the kitchen. Porch then signed a written statement of his version of events. In that statement, Porch also indicated he told this version of events to the investigators that interviewed him after the murder.

Following the second interview, Major James Smith contacted Investigator Strange to confirm Porch's story. Investigator Strange told Major Smith he could not recall Porch telling him he cut himself in the Victim's apartment the day before the murder. Major Smith returned to Porch's home that same day and asked Porch about his story. Porch told Major Smith he could not recall whether he told Investigator Strange about the cut. Porch stated he was scared to tell the police about the cut because he did not want to be considered a suspect.

On July 2, 2007, Captain James White and Major Smith interviewed Porch again. Porch told the officers he was present at Victim's apartment during the early morning hours of May 13, 2006. Porch stated he and Victim were drinking together that night and started kissing and fondling one another. According to Porch, Mallory arrived at the apartment and became angry. Mallory and Victim started arguing in

front of Porch but later went to the kitchen to continue arguing. Porch stated he saw Victim push Mallory and Mallory "swung at her" with an unidentified item in his hand. Porch told the officers he stepped in between Mallory and the Victim to stop them from fighting and Mallory cut him. Porch then went to the kitchen to wrap his hand with paper towels and clean up the blood. According to Porch, Victim was "slouched" on the couch when he left, but he did not think she was badly injured. Porch explained he made inconsistent statements to police because he "was afraid [he] would be charged as an accomplice, or accused of actually doing it. [He] was also afraid [his] wife would find out about [him] and [Victim] getting involved that morning." During the interview, Captain White noticed Porch was left handed.

Mallory was tried twice for Victim's murder. Porch testified consistent with his July 2, 2007 statement in each of those proceedings. The first trial ended in a hung jury. Mallory then elected to proceed to a bench trial and was acquitted. Following his acquittal, Mallory contacted the Richland County Sheriff's Department (RCSD) and requested they reopen the investigation into his wife's murder. Deputy Chief David Wilson was assigned to investigate the case. Chief Wilson reviewed the investigation file and noticed several inconsistencies. Chief Wilson was bothered by Porch's shifting statements to police. Chief Wilson noted the stab wounds were to the Victim's right side, which led him to suspect the assailant was left-handed. Chief Wilson learned Porch was left-handed. Finally, Chief Wilson reviewed DNA evidence from the crime scene, which revealed further inconsistencies relating to Porch's version of events. Specifically, investigators found Porch's blood not only in the kitchen, but also on Victim's shirt.

Chief Wilson interviewed several other witnesses and secured a warrant for Porch's arrest. Officers learned Porch had moved from South Carolina back to his home town in California. On July 8, 2009, RCSD officers arrested Porch in a store in California and transported him to the Long Beach Police Department for questioning. Investigators Shawn McDaniel and Brian Godfrey notified Porch of his Miranda rights around 1:00 a.m. on July 9, 2009. That morning, Porch admitted he stabbed Victim but claimed it was an accident.

Investigators McDaniel and Godfrey reviewed the case file to determine if the evidence supported Porch's accident claim. The investigators then interviewed Porch again on July 10, 2009. At that time, Porch told the investigators he initiated intimate contact with Victim and she attacked him with the knife. Porch told officers he hit Victim in the head with his palms and once on the right side of her head with his left elbow.

Investigators McDaniel and Godfrey then took Porch to the Los Angeles County Sheriff's Department for a third interview, which was recorded. Initially, Investigator Cohen from the Los Angeles County Sheriff's Office interviewed Porch for six and a half hours. Investigators McDaniel and Godfrey then interviewed Porch. Subsequently, investigators brought Porch back to South Carolina for trial.

Prior to trial, Porch challenged the sufficiency of the evidence to support probable cause for his arrest warrant. Porch argued Chief Wilson intentionally or recklessly omitted information from his arrest warrant affidavit and any evidence gathered as a result of his arrest should be suppressed. The trial court granted Porch a pretrial hearing to determine if the arrest warrant was valid but declined to suppress the evidence gathered as a result of Porch's arrest.

Porch also made a motion in limine to exclude the entire recorded interrogation from California because Investigator Cohen was unavailable to testify. Porch argued he would not be able to cross-examine her because the California state court declined to enforce the South Carolina subpoena sent by the State. The trial court found Porch had an opportunity to cross-examine Investigator Cohen regarding the video at a pretrial *Jackson v. Denno*[2] hearing. The trial court believed that opportunity to cross-examine was all that is necessary under *Crawford v. Washington*[3] but took the matter under advisement. The next morning, prior to trial, the court ruled the portion of the interview conducted by Investigator Cohen was inadmissible but the portion of the interview conducted by Investigators McDaniel and Godfrey was admissible.

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

3. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

During the trial, Porch testified on his own behalf. Prior to his testimony, Porch inquired whether he would be allowed to discuss what he was told in the six-and-a-half-hour interview the court determined was not admissible because of Investigator Cohen's absence. The State argued, "[I]f Mr. Porch testifies about specific occurrences within that six and a half hour interview with Investigator Cohen, ... it opens the door for the possibility of us playing portions of that video as well." The trial court indicated it was troubled by Investigator Cohen's absence but agreed that Porch's testifying about Investigator Cohen's interview could potentially open the door for the video of the interview to be admitted into evidence. Porch decided not to testify about any statements from the recorded interview in order to ensure the State would not have an opportunity to rebut his testimony with the video.

The jury found Porch guilty of Victim's murder. The trial court sentenced Porch to fifty years' imprisonment. This appeal followed.

## LAW/ANALYSIS

### I. *Franks v. Delaware*

█ Porch argues the RCSD omitted critical exculpatory information from the arrest warrant. Porch asserts in light of the omitted information, no probable cause existed to support his arrest warrant. Therefore, Porch requests this court void the arrest warrant and suppress any evidence resulting from Porch's arrest.

█ "In *Franks v. Delaware*, the United States Supreme Court held that the Fourth and Fourteenth Amendments gave a defendant the right in certain circumstances to challenge the veracity of a warrant affidavit after the warrant had been issued and executed." *State v. Missouri*, 337 S.C. 548, 553, 524 S.E.2d 394, 396 (1999). Entitlement to a *Franks* hearing is a matter of law subject to de novo review. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008). The *Franks* test applies in cases when officers include false information in a warrant affidavit and cases when officers omit potentially exculpatory information. *Missouri*, 337 S.C. at 554, 524 S.E.2d at 397. While we commend the trial court in this case for holding a

*Franks* hearing out of an abundance of caution, we find Porch failed to overcome his heavy burden to establish he was entitled to such a hearing. Furthermore, we take this opportunity to clarify the proper standard trial courts should apply in cases in which the defendant challenges the *omission* of evidence from the arrest affidavit.

 "To be entitled to a *Franks* hearing for an alleged omission, the challenger must make a preliminary showing that the information in question was omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge." *Id.* "There will be no *Franks* violation if the affidavit, *including the omitted data*, still contains sufficient information to establish probable cause." *Id.* (emphasis added).

 The defendant has the burden of proving the officer acted with the requisite intent. *State v. Gore*, 408 S.C. 237, 244, 758 S.E.2d 717, 721 (Ct. App. 2014). "A party attempting to demonstrate information was intentionally or recklessly omitted from an affidavit bears a heavy burden of proof." *State v. Lynch*, 412 S.C. 156, 179, 771 S.E.2d 346, 358 (Ct. App. 2015). "The defendant must also show that the omitted material was necessary to the finding of probable cause, i.e., that the omitted material was such that *its inclusion* in the affidavit would defeat probable cause." *Id.* at 180, 771 S.E.2d at 358–59 (emphasis added) (quoting *United States v. Shorter*, 328 F.3d 167, 170 (4th Cir. 2003)). "Upon making this two-part preliminary showing, a defendant is entitled to a hearing, at which he bears the burden of proving the allegations by a preponderance of the evidence." *Id.* at 180, 771 S.E.2d at 359 (quoting *Shorter*, 328 F.3d at 170). "If a *Franks* hearing is appropriate and an affiant's material perjury or recklessness is established by a preponderance of the evidence, the warrant 'must be voided' and evidence or testimony gathered pursuant to it must be excluded." *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)).

 "The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." *Colkley*, 899 F.2d at 301 (quoting *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987)). " '[M]ere[ ] neligen[ce] in ... recording the facts relevant to a probable

cause determination' is not enough." *Id.* (alterations in original) (quoting *Franks*, 438 U.S. at 170, 98 S.Ct. 2674). An omission does not per se invalidate the arrest warrant. *Gore*, 408 S.C. at 245, 758 S.E.2d at 721. The Fourth Circuit has expressed "doubts about the validity of inferring bad motive under *Franks* from the fact of omission alone, for such an inference collapses into a single inquiry the two elements—'intentionality' and 'materiality'—which *Franks* states are independently necessary." *Colkley*, 899 F.2d at 301.

■■■ "Probable cause is a 'commonsense, nontechnical conception [ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *State v. Morris*, 411 S.C. 571, 580, 769 S.E.2d 854, 859 (2015) (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

Porch asserted *Franks* requires the trial court excise any offending information from an arrest warrant affidavit, then analyze the affidavit to determine if probable cause still exists to support the warrant. However, Porch conflates the test for the inclusion of false information in a warrant affidavit with the test for omission of potentially exculpatory information. If a defendant carries his heavy burden of demonstrating information was intentionally or recklessly omitted from the affidavit, the trial court must then include the potentially exculpatory information and determine if probable cause exists.

We find Porch failed to overcome his burden to show Chief Wilson intentionally or recklessly omitted potentially exculpatory information from his warrant affidavit. In the affidavit, Chief Wilson stated:

That on 05/14/2006 while at 1103 Pinelane Rd. Apt. 331C in the Dentsville Magisterial District of Richland County, one Joshua Porch did commit the crime of Murder in that he did with malice and aforethought assault and stab Nakia Mallory in the neck which resulted in the death of Nakia Mallory. The defendant has admitted to being at the scene of the crime during the assault and stabbing and has been further implicated in the crime by DNA testing of blood found at the scene that puts the defendant at the scene and implicates the defendant in the assault at the time of the murder.

Chief Wilson stated he faxed the warrant to Judge Phil Newsom and personally appeared before the magistrate to discuss the case. Neither Chief Wilson nor Judge Newsom remembered the specific details they discussed prior to Judge Newsom signing the warrant. Judge Newsom agreed with Chief Wilson probable cause existed to believe Porch committed the murder and authorized the arrest warrant.

Judge Newsom also testified he never signs a warrant before the officer requesting the warrant physically appears before him. Judge Newsom was "sure" Chief Wilson told him some background on this case, but he could not recall anything in particular and he stated warrant proceedings are not recorded. Finally, Judge Newsom stated he did not remember Chief Wilson telling him Porch admitted being at the crime scene because Porch witnessed the Victim's husband stab her.

During the pretrial hearing, Chief Wilson testified he did not include some information in the affidavit. Specifically, Wilson admitted he did not include (1) information from an eye witness from the first two trials who testified she heard a "domestic argument" coming from the apartment and saw a black male running toward a white van; (2) information from a security guard at the hospital Mallory took Victim to who testified he heard Mallory say, "Bitch bled all over my van, my walls, my Playstation" and saw Mallory remove something from his van while it was at the hospital; (3) Mallory had "plenty of time" to commit this murder; (4) Porch's statements regarding how his blood came to be at the scene of the crime; (5) information that Mallory had been tried twice for this crime and Porch testified for the State in both instances; and (6) information that the situation during the argument was "fluid" and the blood could have gotten on Victim's shirt during her fight with Mallory. However, Chief Wilson testified none of the information he included in the affidavit was false, and he believed the totality of the circumstances established probable cause to arrest Porch for Victim's murder.

Chief Wilson admitted he omitted some information from the warrant affidavit, but we find the content of the omissions alone is insufficient evidence to demonstrate Chief Wilson acted intentionally or with reckless disregard of whether the omissions would make the affidavit misleading. There is no evidence Chief Wilson intentionally omitted the statements

regarding Mallory's involvement in his wife's death. Furthermore, including the statements from all four versions of Porch's story was unnecessary because those statements were not credible. Accordingly, we find Porch failed to make a sufficient showing to entitle him to a *Franks* hearing.

While we find Porch failed to demonstrate Chief Wilson intentionally or recklessly omitted potentially exculpatory information, we also find, even including the potentially exculpatory information, the affidavit was still sufficient to support a finding of probable cause to secure an arrest warrant for Porch. Porch admitted he was present at the murder scene and his blood was found in the same area where Victim's body was found.

Although Porch testified for the State in Mallory's murder trial, his story continued to change throughout the investigation. If all of this information were included in the affidavit presented to the magistrate, we find probable cause would have supported an arrest warrant for Porch. Accordingly, we affirm the trial court's decision not to suppress the evidence discovered as a result of Porch's arrest.

## II. Confrontation Clause

 Porch argues the trial court erred by "threatening Porch with the introduction of a videotape displaying [Porch's] interrogation" in violation of the Confrontation Clause. Porch also asserts the trial court's decision to allow the State to rebut his testimony using the video limited his ability to present a full and complete defense.[4]

 "As a general rule, if an issue was not raised and ruled upon below, it will not be considered for the first time on appeal." *State v. Santiago*, 370 S.C. 153, 163, 634 S.E.2d 23, 28 (Ct. App. 2006). "[A] proffer of testimony is required to preserve the issue of whether the testimony was properly

---

4. Porch also argues the trial court erred in finding he had an opportunity to cross-examine Investigator Cohen during the *Jackson v. Denno* hearing. However, Porch admits the State only submitted that portion of the interview conducted by Investigators McDaniel and Godfrey. Because the State did not seek to admit any portion of the interview conducted by Investigator Cohen, we find this argument is without merit.

excluded by the trial [court], and an appellate court will not consider error alleged in the exclusion of testimony unless the record on appeal shows fairly what the excluded testimony would have been." *Id.* at 163, 634 S.E.2d at 29.

We find this issue is not preserved for this court's review. The trial court indicated the State may have been able to rebut Porch's testimony by introducing the video if Porch opened the door by testifying about the California interrogation. However, Porch failed to proffer what his testimony would have been if he were allowed to testify about the interrogation without opening the door. Therefore, we decline to address Porch's Confrontation Clause argument.

## CONCLUSION

Based on the foregoing, Porch's conviction is

**AFFIRMED.**

KONDUROS and GEATHERS, JJ., concur.