# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Russell Shane Carter, Respondent/Appellant,

v.

Bruce Bryant, as Representative for the Office of the York County Sheriff, Appellant/Respondent.

Appellate Case No. 2016-002556

---

Appeal From York County
John C. Hayes, III, Circuit Court Judge

---

Opinion No. 5710
Heard September 16, 2019 – Filed January 15, 2020

---

## AFFIRMED IN PART AND REVERSED IN PART

---

Andrew F. Lindemann, of Lindemann, Davis & Hughes, PA, and Robert David Garfield, of Crowe LaFave, LLC, both of Columbia, for Appellant/Respondent.

John Christopher Mills, of J. Christopher Mills, LLC, and Alexandre Thomas Postic, of Law Offices of Alex Postic, both of Columbia, for Respondent/Appellant.

---

**HILL, J.:** Following the *nolle pros* dismissal of an assault and battery of a high and aggravated nature (ABHAN) charge against him, Russell Shane Carter sued former York County Sheriff Bruce Bryant, in his official capacity as York County Sheriff, for false arrest and malicious prosecution. The trial court directed a verdict for Bryant on the false arrest claim but let the malicious prosecution claim proceed. The jury awarded Carter $150,000 actual damages. Both sides now appeal. Carter

appeals the directed verdict against him on his false arrest claim and the exclusion of his expert witness. We affirm these rulings. Bryant raises several issues on appeal, including the fundamental one that the trial court should have granted him a judgment notwithstanding the verdict (JNOV) on Carter's malicious prosecution claim because the only reasonable inference from the evidence was that there was probable cause to arrest Carter. We agree with Bryant and, therefore, reverse the judgment against him.

## I.

Carter and his family rented a home on property they shared with three mobile homes. Carter served as caretaker of the property, including assisting other renters with the troublesome well that served as the water supply.

According to Carter, one night in April 2012, he was awakened by someone banging on his front door. The person refused to identify himself, so Carter opened his front door and cracked the screen door to talk with him. A man, later identified as Michael Robinson Faile, stated he wanted water. Carter repeatedly told Faile he was trespassing and asked him to leave, but Faile refused. Carter sensed Faile smelled of alcohol, decided Faile would not listen, and agreed to check the water the next day. Faile demanded Carter check the water immediately. Carter asked his wife to call the sheriff's office. Carter stated Faile moved forward and put his hands on the screen door, and in response, Carter's wife handed her husband an aluminum baseball bat. Carter again asked Faile to leave, but Faile refused. Carter tried to close the screen door, but Faile placed one hand inside the door to hold it open and struck Carter on the side of the head with his other hand. As Carter tried to force Faile outside, Faile continued to hit Carter. Carter then hit Faile in the head with the bat and continued to hit him after Faile fell to the ground. Carter stood over Faile until the police arrived. The entire fracas occurred on Carter's front porch.

When Deputy Kevin Gwinn of the York County Sheriff's Office arrived at the scene, Carter was holding the bat and standing over a motionless Faile. EMS arrived and took Faile to a hospital, and Deputy Gwinn and the other responding officers took statements from Carter and his wife. Carter told Gwinn his version of the altercation and asked if he was protected by the "Stand My Ground Law," referring to the South Carolina Protection of Persons and Property Act (PPPA), also popularly known as the law incorporating the common law "Castle Doctrine." *See* S.C. Code Ann. §§ 16-11-410 to -450 (2015). One of the officers responded "that law might be down in Florida but that ain't up here." The officers did not arrest Carter at this time.

After leaving Carter's home, Deputy Gwinn went to the hospital to obtain Faile's statement.  Faile told Deputy Gwinn he went to speak with Carter about the water, in hopes of assisting with any necessary repair of the well.  He explained he was walking off Carter's porch when Carter hit him in the back of the head, and a struggle ensued.  Deputy Gwinn noted Faile's head was injured and even sunken in several spots, and Faile had bruises all over his body.  Deputy Gwinn prepared an incident report, which detailed both Carter's and Faile's versions of the incident and Faile's injuries.

The following day, Deputy Gwinn met with York County magistrate Leon Yard to discuss the case.  After Deputy Gwinn presented the case, Yard determined there was probable cause to issue an arrest warrant for Carter on the charge of ABHAN.  The affidavit on the face of the warrant sworn by Deputy Gwinn states:

> On April 25, 2012, in the county of York, one Russell Shane Carter did willfully and unlawfully violate SC Laws by striking Michael Robin Faile about the head and body with an aluminum baseball bat causing visible injuries that required medical attention.  The victim was transported to Piedmont Medical Center in Rock Hill by EMS.  Probable cause based on a police investigation.  REPORT # 201200013457.

An assistant solicitor later *nolle prossed* the charge against Carter (who was never indicted), noting on the dismissal form that Carter's "actions were within the law" and later testifying Carter's actions were likely protected by the PPPA, the Castle Doctrine, and the defense of habitation.

## II. CARTER'S APPEAL

### A. False Arrest and the Facially Valid Warrant Doctrine

Carter's appeal centers on the trial court's directing a verdict against him on his false arrest claim.  We may reverse the grant of a directed verdict only if there is no evidence supporting it or it is controlled by an error of law.  *Estate of Carr ex rel. Bolton v. Circle S Enters., Inc.*, 379 S.C. 31, 39, 664 S.E.2d 83, 86 (Ct. App. 2008).  The trial court ruled that because Carter was arrested on the strength of a facially valid warrant, there was no false arrest as a matter of law.  We agree with the trial court.

False arrest in South Carolina is also known as false imprisonment. The elements of the tort are intentional restraint of another without lawful justification. *See Jones v. City of Columbia*, 301 S.C. 62, 64, 389 S.E.2d 662, 663 (1990); *Jones by Robinson v. Winn-Dixie Greenville, Inc.*, 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct. App. 1995); Patrick Hubbard & Robert L. Felix, *The South Carolina Law of Torts* 455 (4th ed. 2011); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). The hallmark of the tort is an unlawful restraint deliberately applied, and it is grounded in the law of trespass. *See* William L. Prosser & W. Page Keeton et al., *Prosser and Keeton on Torts* § 11 (5th ed. 1984).

It has long been the law that one arrested pursuant to a facially valid warrant has no cause of action for false arrest. *Bushardt v. United Inv. Co.*, 121 S.C. 324, 330, 113 S.E. 637, 639 (1922) ("It has been definitely decided in this jurisdiction that where one is 'properly arrested by lawful authority,' 'an action for false imprisonment cannot be maintained against the party causing the arrest.'"). In the event no probable cause existed, the remedy is to sue for malicious prosecution, not false arrest. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) ("At common law, allegations that a warrantless arrest or imprisonment was not supported by probable cause advanced a claim of false arrest or imprisonment. . . . However, allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued, are analogous to the common-law tort of malicious prosecution."); *see also Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) (accord).

An early South Carolina case relies on a distinction drawn by Lord Mansfield that the trespass-based wrong of false imprisonment occurs when a defendant's actions are "upon the stating of it" manifestly illegal, while a malicious prosecution is for a prosecution that began as manifestly legal but "was carried on without cause." *McHugh v. Pundt*, 17 S.C.L. (1 Bail.) 441, 445 (1830) (quoting *Sutton v. Johnstone*, 1 T.R. 544); *see generally* Hubbard & Felix, *supra* at 464 ("The distinguishing factor of the tort of false imprisonment, is that, unlike either [malicious prosecution or abuse of process], it cannot, by definition, involve a *lawful* arrest or detention."). If a plaintiff suing for false arrest "has shown that the arrest and imprisonment of which he complains was made under legal process, regular in form, and lawfully issued and executed, then he has proved himself out of court." *McConnell v. Kennedy*, 29 S.C. 180, 186–87, 7 S.E. 76, 78 (1888).

It appears *Gist v. Berkeley County Sheriff's Department*, 336 S.C. 611, 521 S.E.2d 163 (Ct. App. 1999), and *Law v. South Carolina Department of Corrections*, 368

S.C. 424, 629 S.E.2d 642 (2006), have caused some confusion surrounding the elements of false arrest. However, in *Gist*, the defendant sheriff's department conceded the warrant lacked probable cause. 336 S.C. at 166, 521 S.E.2d at 616. Citing *Wortman v. Spartanburg*, 310 S.C. 1, 425 S.E.2d 18 (1992), the court in *Gist* stated the "fundamental issue in determining the lawfulness of an arrest is whether there was 'probable cause' to make the arrest." *Gist*, 336 S.C. at 615, 521 S.E.2d at 165; *see also Law*, 368 S.C. at 441, 629 S.E.2d at 651 (accord). *Wortman*, however, involved a warrantless arrest. It is true of course that a warrant issued without probable cause violates the Fourth Amendment of the United States Constitution and Article I, section 10 of the South Carolina Constitution and makes any seizure based solely on the warrant unlawful. *See, e.g.*, *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017) (stating in a §1983 case, "[i]f the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment"). But a facially valid warrant that proves to lack probable cause does not make the initial arrest unlawful for the purposes of the tort of false arrest. Otherwise, the doctrine of facial validity would be extinct.

Neither *Gist* nor *Law* mentioned—much less overruled—the long-standing precedent that an arrest pursuant to a facially valid warrant will not support an action for false arrest. This unbroken line of authority was not breached by *Gist* or *Law* and compels us to affirm the trial court's grant of directed verdict on Carter's false arrest claim. *See Pundt*, 17 S.C.L. (1 Bail.) at 445–46; *McConnell*, 29 S.C. at 186–87, 7 S.E. at 78–79; *Bushardt*, 121 S.C. at 330, 113 S.E. at 639; *Cannon v. Haverty Furniture Co.*, 179 S.C. 1, 17–19, 183 S.E. 469, 476, 479–80 (1935); *Watkins v. Mobil Oil Corp.*, 281 S.C. 79, 80, 313 S.E.2d 641, 642 (Ct. App. 1984); *Manley v. Manley*, 291 S.C. 325, 330, 353 S.E.2d 312, 314 (Ct. App. 1987). We could cite many more supporting cases, but as the court noted in *Pundt*, such piling on would "swell this opinion to inordinate length," 17 S.C.L. (1 Bail.) at 477, and we have said enough.

We agree with the trial court that the arrest warrant was facially valid. The facially valid inquiry is not an invitation to look beyond the language of the warrant, which need only contain information given under oath that "plainly and substantially" sets forth the offense charged. S.C. Code Ann. § 22-3-710 (2007). We conclude as a matter of law that the warrant here was facially valid and complied with section 22-3-710 as it set forth concrete facts plainly and substantially showing Carter had committed the crime. Deputy Gwinn's affidavit was sworn under oath, and the magistrate signed the warrant attesting that the affidavit furnished "reasonable grounds to believe" Carter committed the crime of ABHAN. A warrant is "facially

valid" if (1) it is regular in form, (2) it is issued by a court official having authority to issue the warrant for the conduct it describes and jurisdiction over the person charged, and (3) all proceedings required for the proper issuance of the warrant have duly taken place. *See* Restatement (Second) of Torts § 123 (Am. Law Inst. 2019). Here, the warrant was regular in form because it was on a form approved by the South Carolina Attorney General as required by section 17-13-160 of the South Carolina Code (2014) and its content complied with section 22-3-710. There is no dispute Magistrate Yard had sufficient authority and jurisdiction to issue the warrant; that he was neutral, independent, and detached; and all necessary proceedings for the warrant's issuance duly occurred. *See McConnell*, 29 S.C. at 189–90, 7 S.E. at 80 (an arrest warrant need not charge offense with the "technical precision required in indictments," and the intent of the statute requiring offenses to be "plainly and substantially" stated in the warrant is to "enable the party accused to understand the nature of the offense with which he is charged, so that he might be prepared to meet the charge at the proper time").

We emphasize that a person proximately harmed by being arrested on a facially valid warrant that transpires to lack probable cause may have several remedies, including a §1983 action based on an unlawful seizure, *see Manuel*, 137 S. Ct. at 918 ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements."), or an action for malicious prosecution. He just does not have a claim for false arrest.

B. Carter's Challenge to the Facially Valid Warrant Doctrine

Carter contends the warrant was invalid because (1) the affidavit on the face of the warrant failed to state an adequate factual basis for the crime charged and (2) Deputy Gwinn inadvertently or deliberately omitted material facts during the warrant application process that bore on probable cause, specifically facts related to Faile's aggression towards Carter while Carter was in his dwelling.

i. Whether the Warrant Established Probable Cause

Carter maintains the warrant was facially invalid because the affidavit contained only conclusory statements and did not give the magistrate enough facts to find probable cause. *See State v. Smith*, 301 S.C. 371, 373, 392 S.E.2d 182, 183 (1990).

As we have noted, whether an arrest warrant was supported by probable cause is a different question than whether the warrant was facially valid.

Still Carter argues that, viewing the record in the light most favorable to him, there was evidence enabling a reasonable jury to find probable cause was lacking. He points to evidence that Faile provoked and attacked him in his home, and therefore, all of his later blows to Faile were protected by the PPPA and the defense of habitation. He reasons that because of those defenses, the only evidence in the record that could lead to a finding of probable cause was Faile's claim that Carter struck him first.

Carter's argument is off base, for whether the warrant was supported by probable cause is not a jury issue under the circumstances here. To establish the tort of false arrest, a party must prove his arrest was unlawful. If Carter had been arrested without a warrant, he would have to prove there was a lack of probable cause for his arrest, a question a jury ordinarily must answer. *Jackson. v. City of Abbeville*, 366 S.C. 662, 669–70, 623 S.E.2d 656, 660 (Ct. App. 2005). As we have held, Carter was arrested based on a facially valid warrant, which dooms his false arrest case. Even if the facially valid test required determination of whether the warrant was supported by probable cause, that question would not be for the jury but for the court. *See State v. Dill*, 423 S.C. 534, 544–45, 816 S.E.2d 557, 563 (2018) (holding in determining sufficiency of probable cause for issuance of a warrant, the reviewing court, while giving great deference to the magistrate's probable cause conclusion, must decide whether the conclusion is anchored by a substantial basis). While *Dill* is a criminal case, we see no reason to adopt a contrary view for civil cases that would enable the jury rather than the court to rule upon whether probable cause existed to issue a criminal arrest warrant.

We add one more point. Whether Carter was protected by the immunity of the PPPA or a defense does not affect the validity of the warrant. Only diplomatic immunity includes an immunity from arrest; an immunity such as the PPPA, which a person may plead to bar prosecution or secure release from custody, "does not destroy the privilege of the one making the arrest." Restatement (Second) of Torts § 123 comment d (Am. Law Inst. 2019); *see also State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 265–66 (2013) (holding immunity provided by PPPA is immunity from prosecution).

## ii. *Franks v. Delaware* and the Facially Valid Warrant Doctrine

In his final attack on the trial court's directed verdict ruling, Carter alleges Deputy Gwinn inadvertently or deliberately omitted material facts during the warrant application process that would have defeated probable cause, specifically facts related to Faile's assault on Carter while Carter was in his home and therefore protected by the PPPA. According to Carter, this omission entitled him to a *Franks* hearing that would have allowed him to have the warrant declared void. *See Franks v. Delaware*, 438 U.S. 154 (1978) (holding the Fourth and Fourteenth Amendments gave defendants the right to challenge the veracity of a warrant affidavit after the warrant was issued and executed if the defendant could make a preliminary showing the officer who presented the case to the magistrate judge intentionally or with reckless disregard told false information to the judge).

Carter did not mention *Franks* or raise this issue to the trial court nor produce any evidence in his case in chief of the warrant application process or any alleged omissions or misrepresentations by the officers. We therefore find this issue unpreserved as the trial court was not given the chance to ponder or rule upon it.

Nonetheless, even if the issue were preserved, we are not aware of any reported decision by our state appellate courts transporting the *Franks* procedure—designed for use in motions to suppress evidence in criminal prosecutions—to civil false arrest claims. But the transfer has occurred in §1983 cases in other courts, and some think it a logical extension of *Franks*. *See* Goldstein, *From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions*, 106 Colum. L. Rev. 643, 681–64 (2006).

As Carter suggests, the facially valid warrant doctrine carries the risk of allowing government officials to illegitimately procure warrants by intentionally or recklessly falsifying or omitting material facts and then using the warrant as a shield against a false arrest claim. *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (police instrumental in confinement of plaintiff by supplying misleading information "cannot hide behind the officials who they have defrauded"). The federal courts have recognized, in the context of §1983 actions, "a man [is] responsible for the natural consequences of his actions," *Monroe v. Pape*, 365 U.S. 167, 187 (1961), and have long held a police officer who should have known his affidavit did not establish probable cause is not entitled to qualified immunity when sued in a §1983 action, *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

Drawing on the *Franks* procedure, courts in §1983 actions have acknowledged that a facially valid warrant or other facially sufficient legal process (be it a preliminary

hearing ruling or even a grand jury indictment) does not cut off a plaintiff's Fourth Amendment rights if the process has been so tainted that "the result is that probable cause is lacking." *Manuel*, 137 S. Ct. at 920 n.8; *see, e.g.*, *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546 (4th Cir. 2017); *Winfrey v. Rogers*, 901 F.3d 483, 491–92, 496 (5th Cir. 2018) (holding falsity in affidavit violates right not to be arrested without probable cause; causal chain not broken by grand jury indictment based on same falsity); *Juriss v. McGowan*, 957 F.2d 345, 350–51 (7th Cir. 1992). Borrowing from *Franks*, these courts allow a §1983 plaintiff arrested on a facially valid warrant to attack the underlying probable cause if the plaintiff can prove the officer procured the warrant through deliberate or reckless false statements or omissions that were material to the finding of probable cause; then, the court deems the warrant void, and the plaintiff's §1983 claim survives. *See Humbert*, 866 F.3d at 556–59; *see also Rainsberger v. Benner*, 913 F.3d 640 (7th Cir. 2019).

C. Exclusion of Carter's Expert Witness

In support of his false arrest claim, Carter offered an expert witness on police investigations. During the proffer of his testimony, the expert opined among other things that the warrant lacked probable cause. The trial court, finding the expert ill-prepared, excluded him from testifying on the ground his proposed testimony lacked foundation and would not assist the jury. On appeal, Carter contends the trial court erred in excluding the expert because any deficiencies in the expert's preparation went to the weight rather than the admissibility of his testimony.

We review evidentiary rulings for an abuse of discretion and must affirm them unless they rest on incorrect law or inadequate facts. *State v. Green*, 427 S.C. 223, 229, 830 S.E.2d 711, 714 (Ct. App. 2019). The trial court properly discharged its gatekeeping role. As we have held, the issue of whether the arrest warrant lacked probable cause was not relevant to the jury's decision on Carter's false arrest claim. Even if it were, the expert's proffered testimony on probable cause was a legal conclusion. Generally, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704, SCRE. However, expert testimony on issues of law is rarely admissible. *See Dawkins v. Fields*, 354 S.C. 58, 66–67, 580 S.E.2d 433, 437 (2003) (finding trial court properly declined to consider an expert affidavit that mainly offered legal arguments concerning the reasons the trial court should deny summary judgment); *see also State v. Commander*, 396 S.C. 254, 264, 721 S.E.2d 413, 418 (2011). The common law and the federal rules of evidence forbid opinions on issues of law, except foreign law. *McCormick on Evidence* § 12 (7th ed. 2016); *Weinstein's Federal Evidence* § 704.04[1] (2nd ed. 2019); *see United States v. Oti*,

872 F. 3d 678, 691–92 (5th Cir. 2017) (holding expert is never permitted to testify as to conclusions of law).

Although the trial court did not invoke Rule 704, SCRE, its ruling embodied that principle.  *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.").  Rule 704, SCRE, is identical to Rule 704 of the Federal Rules of Evidence as it existed before a 1984 amendment.  The federal advisory committee note emphasizes that Rule 704's "abolition of the ultimate issue rule does not lower the bar so as to admit all opinions," because an opinion on the ultimate issue has to be "otherwise admissible," meaning in the context here that it must be helpful to the jury as required by Rule 702, SCRE, and satisfy the strictures of Rule 403, SCRE.  The opinion here was not helpful to the jury because it stated a legal conclusion and essentially told the jury what result to reach on the probable cause question.  *Weinstein's Federal Evidence* § 704.04[2][01] (2nd ed. 2019) (stating unhelpfulness is the most common reason for excluding expert legal conclusions, for such an opinion "supplies the jury with no information other than the witness's view of how the verdict should read").  The concept of "probable cause" is a legal term of art carrying a specialized meaning distinct from everyday usage.  *See United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006) (concluding testimony using "terms with considerable legal baggage . . . nearly always invade the province of the jury").

We agree with the trial court that the expert's opinion would not have assisted the jury.  *See Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993) (affirming exclusion of expert opinion on probable cause for arrest in a § 1983 action because it would not have assisted the jury); *Cameron v. City of New York*, 598 F.3d 50, 62 (2nd Cir. 2010) (finding expert witness testimony on probable cause improper in malicious prosecution case).  As the wise trial court well knew, allowing an "investigations" expert to define probable cause to the jury and apply his view of the facts to his definition of the law ran the risk of misleading the jury and telling them what their verdict should be, much like the "oath-helpers" of ancient times.  *See* Fed. R. Evid. 704 (advisory committee note).  It also risked treading on the trial judge's role as the sole source of the law in the trial, further confusing the jury (but not the judge).

We affirm the trial court's exclusion of Carter's false arrest expert.

## III. BRYANT'S APPEAL

A. <u>The Probable Cause Element of Carter's Malicious Prosecution Claim</u>

In his appeal, Bryant argues the trial court erred in denying his motion for JNOV on Carter's cause of action for malicious prosecution because the only inference from the evidence was that probable cause existed to issue the warrant for his arrest. We agree.

In ruling on a JNOV motion, the trial court construes all reasonable inferences and ambiguities in the evidence in favor of the non-moving party as to each element of the claim and must deny the motion if more than one reasonable inference emerges. If, however, the evidence could only produce one reasonable conclusion, the motion must be granted. We use the same yardstick as the trial court. *See Allegro, Inc. v. Scully*, 418 S.C. 24, 32, 791 S.E.2d 140, 144 (2016).

To establish a claim for malicious prosecution, a plaintiff must prove the following elements by the greater weight of the evidence: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of the proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause; and (6) resulting injury or damage. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 435, 629 S.E.2d 642, 648 (2006).

In assessing whether probable cause existed, we must view things as they appeared to the officers arriving at this chaotic scene. It is an inquiry guided by common sense, and one that acknowledges human conflict is messy and tense encounters can produce differing perspectives on what happened. Recognizing that lack of clarity, at the warrant stage the law does not demand certainty, clear and convincing proof, proof beyond a reasonable doubt, or even proof by the greater weight of the evidence. Instead, the law insists on something less, but something more than reasonable suspicion: it demands a "fair probability." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Jones v. City of Columbia*, 301 S.C. 62, 65, 389 S.E.2d 662, 663 (1990) ("'Probable cause' is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise."); *Jackson v. City of Abbeville*, 366 S.C. 662, 667, 623 S.E.2d 656, 659 (Ct. App. 2005) ("Probable cause is determined as of the time of the arrest, based on facts and circumstances—objectively measured—known to the arresting officer. The determination of probable cause is not an academic exercise in hindsight."); *State v. Morris*, 411 S.C. 571, 580, 769 S.E.2d 854, 859 (2015) ("Probable cause is a 'commonsense, nontechnical conception [ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" (alterations in original) (quoting *Ornelas v. United States*, 517

U.S. 690, 695 (1996))).  As noted in *Brinegar v. United States*, 338 U.S. 160, 176 (1949):

> These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.  But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

Although probable cause is typically an issue for the jury in a malicious prosecution case, the evidence here yielded only one conclusion—that there was probable cause to issue a warrant for Carter's arrest on the charge of ABHAN.  Accordingly, Bryant was entitled to judgment as a matter of law. *Pallares v. Seinar*, 407 S.C. 359, 367, 756 S.E.2d 128, 132 (2014) ("Whether probable cause exists is ordinarily a jury question, but it may be decided as a matter of law when the evidence yields only one conclusion.").  Deputy Gwinn testified Faile was "covered in blood," and had "bruises all over his body."  Deputy Gwinn took statements from both Carter and Faile, whose accounts differed as to who started the altercation and whether Faile was attempting to leave Carter's property when the altercation began.  However, Carter admitted he hit Faile with the bat multiple times, including after Faile was already on the ground, and declared he would have continued to beat Faile until he stopped moving.  Deputy Gwinn observed Faile's head was disfigured.  There were also bruises and abrasions to the back of Faile's head, torso, and a large mark on his upper back consistent with the shape of the business end of a baseball bat.  Deputy Gwinn included this information in his police report and provided it, along with Carter's and Carter's wife's statements, to Judge Yard.  Based on these facts, the only conclusion that can be drawn is that a reasonable person would have believed Carter had committed the crime of ABHAN.  *See* S.C. Code Ann. § 16-3-600(B)(1) (2015)

(defining ABHAN); S.C. Code Ann. § 16-3-600(A)(1) (2015) (defining great bodily injury).

Carter contends the evidence showed he was within his rights in defending himself and his home because Faile assaulted him in his dwelling.  While Carter certainly had a good defense to the alleged ABHAN charge, we can find no evidence in the record that the officers lacked an objectively reasonable, good faith belief that Carter had committed ABHAN.  The officer who misstated that Castle Doctrine law did not apply in South Carolina corrected himself later when speaking with Carter's wife, and there was no evidence this misstatement was repeated to the magistrate or affected the warrant application process.  Carter also points out that Magistrate Yard testified he did not know who the homeowner was when he signed the warrant, but Yard testified he knew Carter's position was that Faile had tried to "enter his dwelling and from there it turned into a physical altercation."  Yard stated he was persuaded Carter had gone too far in his beating of Faile by continuing to strike him beyond what was necessary.

In addition to contending the Castle Doctrine prohibited any probable cause finding, Carter also argues the warrant fails to establish probable cause on its face.  While we discussed probable cause above in Part II of this opinion while considering Carter's false arrest claim, in deciding whether there was insufficient evidence of probable cause to support Carter's malicious prosecution claim, we are free to venture beyond the borders of the warrant and consider the record.  There was confusion in the record about what Deputy Gwinn actually swore to under oath. Deputy Gwinn testified he presented his entire case investigation to Magistrate Yard, and Yard typed up the warrant, which Deputy Gwinn signed and swore to.  In the warrant, Deputy Gwinn stated under oath that his belief in probable cause was based on "police investigation" and cited to his report (the report was made a court's exhibit but was never offered into evidence).  The record recounts the officers' struggle to reconcile the evidence and figure out what happened and who did what.  They were faced with a classic case of conflicting evidence as to who struck the first blow and whether Faile tried to enter Carter's front door.  Carter's wife's statement differed a bit from Carter's.  The officers on scene documented the conflicts and testified they considered the case from every side, and Deputy Gwinn ultimately presented all sides to the magistrate.

Although the ABHAN charge against Carter was *nolle prossed* before a preliminary hearing occurred because the assistant solicitor in charge of Carter's case believed a jury would acquit Carter based on the defense of habitation, the Castle Doctrine, or the PPPA, that fact did not affect whether there was probable cause for Carter's

arrest. The assistant solicitor even testified the arrest was good and the officers' investigation solid. *See Jackson*, 366 S.C. at 666, 623 S.E.2d at 658 ("Probable cause turns not on the individual's actual guilt or innocence, but on whether facts within the officer's knowledge would lead a reasonable person to believe the individual arrested was guilty of a crime."). Furthermore, as we have noted, the PPPA is an affirmative defense that only grants a party immunity from prosecution, not immunity from arrest. *See* S.C. Code Ann. § 16-11-450(A) (2015) ("A person who uses deadly force as permitted by [the PPPA] is justified in using deadly force and *is immune from criminal prosecution* and civil action for the use of deadly force . . . ." (emphasis added)); *see State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 265–66 (2013) (holding immunity provided by PPPA is immunity from prosecution).

We therefore find the trial court erred in denying Bryant JNOV on Carter's malicious prosecution claim because the only reasonable inference from the record is that probable cause supported the warrant for Carter's arrest. Accordingly, we reverse as to this issue. *See McBride v. Sch. Dist. of Greenville Cty.*, 389 S.C. 546, 567, 698 S.E.2d 845, 856 (Ct. App. 2010) (affirming directed verdict as to malicious prosecution claim where witness statements supported finding that sheriff's officers had probable cause for arrest and grand jury had indicted plaintiff).

Because our reversal of the trial court's denial of Bryant's motion for JNOV is dispositive of Bryant's appeal, we do not address Bryant's remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

Accordingly, we affirm the trial court's (1) directed verdict against Carter on his false arrest claim and (2) exclusion of Carter's expert witness. We also hold that the trial court erred in denying Bryant's JNOV motion on Carter's malicious prosecution action, and consequently, we reverse the judgment against him.

**AFFIRMED IN PART AND REVERSED IN PART.**

**LOCKEMY, C.J., and WILLIAMS, J., concur.**